# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CT-01153-SCT

*WILLIAM LEWIS GASKIN*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 5/31/2001 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROSS PARKER SIMONS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/25/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     William Lewis Gaskin was indicted for armed robbery, and the matter was set for trial on May 23, 2001. On that day, voir dire was conducted, and the trial judge left the prosecuting and defending attorneys to seat a jury. When she returned to the courtroom, the trial judge seated the jury, released the other veniremen and informed the jury that they would not do anything more until after lunch. The jurors were taken from the courtroom to lunch. The defense counsel then informed the judge that he had a *Batson* challenge, *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct., 1712, 90 L.Ed.2d 69 (1986). The

trial court informed him that it was a little late to be bringing the challenge, but heard the argument anyway. She determined that a prima facie case existed for discriminatory strikes and allowed the State to argue its race-neutral reasons for striking the jurors. However, the trial judge did not find the reasons convincing and declared a mistrial.

¶2.     The matter was set for trial again on May 29, 2001. At this time another *Batson* challenge was raised and this time the State's rebuttal convinced the trial judge and the trial proceeded. Gaskin was found guilty and sentenced to 25 years. Gaskin appealed, and the case was affirmed by the Court of Appeals. *Gaskin v. State*, 856 So. 2d 363 (Miss. Ct. App. 2003). Gaskin then filed his petition for writ of certiorari which we granted on October 9, 2003. We now affirm.

## FACTS

¶3.     William Lewis Gaskin was arrested following the robbery at knife-point of an Exxon gas station clerk in Pascagoula, Mississippi. Gaskin was indicted for armed robbery. The matter was scheduled for trial on May 23, 2001. After voir dire and a ruling on challenges for cause, the trial judge instructed the attorneys to get together and select a jury. The trial judge then left the courtroom. Upon the trial judge's return, the prosecutor stated ten jurors had been agreed upon to that point. After further consultation, Gaskin's attorney read the names of the agreed upon twelve jurors and one alternate to the court. The court then stated, "All right. Bring the jury in. Ya'll can put your strikes on the record later."

¶4.     After those selected for the jury were called and seated, the trial judge dismissed the remaining veniremen and instructed the bailiff to take the selected jurors to lunch. The judge then directed the attorneys to meet in her office at the end of the lunch period for a conference concerning other matters. Defense counsel at this time stated: "[A]nd, Judge we will have a *Batson* challenge at that time." The judge replied, [W]ell, it's a little late. We've let the jury go." The defense attorney responded that he had

2

not had an opportunity to raise this challenge prior to the judge's dismissing the jury. After hearing the defendant's challenge, the trial judge found that a prima facie case of purposeful discrimination had been established and required the State to provide race-neutral reasons for its strikes. The State was given an opportunity to offer race-neutral reasons for striking the jurors, to which the trial judge responded that she would consider this issue during lunch. She stated, "[I]f I don't find there to be a race-neutral reason, I'd have no choice but to declare a mistrial because I can't get the jurors back to pick other jurors. So, I'm in a precarious situation."

¶5. Prior to the jury's return from the lunch, the trial judge ruled, "I've considered all of this, the *Batson* challenge and discussed it with the attorneys. And in abundance of caution, I'm going to declare a mistrial and we're going to reset this case for trial on Tuesday, May 28th."

¶6. At trial on May 28th, Gaskin again raised a *Batson* objection to the State's exercise of peremptory challenges against blacks. The trial court found that a prima facie case of discrimination had been shown and required the State to offer race-neutral reasons for its peremptory challenges. This time the trial court accepted the State's reasons as being race-neutral and allowed the exercise of the peremptory challenges.

¶7. Gaskin was found guilty and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections. The Court of Appeals affirmed Gaskin's conviction. Gaskin then filed his petition for writ of certiorari in which he argues that because the jury in the first proceeding was empaneled and sworn, that the second proceeding improperly subjected him to double jeopardy. Gaskin also asserts that the Court of Appeals erred in affirming the trial court as to the *Batson* challenge.

## ANALYSIS

¶8. Gaskin raises two issues:

**I.      Whether by Ignoring the Order Entered in Gaskin's First Trial--which Stated That Gaskin's Jury Was Empaneled and Duly Sworn Prior to His Mistrial--the Court of Appeals Changed the Standards Set by the Mississippi Supreme Court, and Recognized by the Court of Appeals, Itself, Which Has Consistently Held That an Absence in the Transcript of the Swearing in of a Jury Is Overcome by an Order That Reflects That a Jury Was Duly Sworn.**

¶9.      Gaskin argues that because there is an order that recites that the jury was duly sworn and empaneled, this is sufficient to have put him in jeopardy in the first proceeding, on May 23, 2001.  The jurors were selected and seated, and the trial judge immediately excused them for a lunch break.  When the defense counsel then raised a ***Batson*** challenge and the State did not adequately prove race-neutral reasons for striking the black veniremen, the trial judge declared a mistrial.  It is the order granting the mistrial that recited the jury had been empaneled and duly sworn that is problematic in this issue.

¶10.     On Gaskin's direct appeal, the Court of Appeals found that the order misstated and incorrectly characterized the events of the first proceeding, specifically as to the juror being administered the oath, ***Gaskin***, 856 So.2d at 366 citing, ***Jenkins v. State***, 759 So.2d 1229, 1234 (Miss. 2000), where the transcript indicated one thing and the eventual order declaring a mistrial recited something else.  In ***Jenkins***, this Court found that the order itself misstated the events and that there was no double jeopardy.

¶11.     Gaskin cites ***Woulard v. State***, 832 So.2d 561 (Miss. Ct. App. 2002), asserting that the Court of Appeals erred in disregarding the fact that the order declaring a mistrial also recited that the jury had been empaneled and duly sworn.  In ***Woulard,*** the defendant asserted that the jury had never been formally administered the formal oath.  The Court of Appeals held that even though the transcript did not indicate that the  jury had been duly sworn, there was an order reciting that the jury had been sworn and, therefore, Woulard did not overcome the presumption that the jury had been formally sworn in prior to the

4

trial. Gaskin argues that he should be granted the same presumption that because the order recites that the jury was sworn, jeopardy attached at the May 21st proceeding.

¶12. This Court required the trial court to supplement the record on this issue and make factual findings and respond. The circumstances reflect that the jury was never sworn, therefore jeopardy did not attach in the first proceeding. In its Factual Finding and Response, the trial court noted that the jury was dismissed for lunch before administration of the oath or the beginning of any phase of the trial. Subsequently, when Gaskin raised a *Batson* challenge and the State failed to demonstrate race-neutral reasons for its strikes, the trial court had no choice but to declare a mistrial. A form order, erroneously reflecting that the jury had been sworn, was signed and entered; however, the entire jury selection process from the record clearly indicates that the seated jury was never administered the oath. Therefore, we hold that because the jury was not sworn in the first proceeding, Gaskin was not subjected to double jeopardy in the subsequent proceeding.

¶13. Furthermore, we are of the opinion that Gaskin failed to timely raise the *Batson* challenge. The defense attorney had an affirmative duty to raise the *Batson* objection during the jury selection process and prior to the dismissal of the venire. *Thomas v. State*, 517 So.2d 1285, 1287 (Miss. 1987). This Court has held that such an objection is timely only where made prior to the impaneling of the jury. *Id*. *See also Watkins v. State*, 262 So.2d 422 (Miss. 1972) (acceptance of a jury precludes later challenge to its composition); *Holloway v. State*, 242 So.2d 454 (Miss. 1970) (failure to voice objection prior to acceptance of a jury waives later challenge); *Goldsby v. State*, 226 Miss. 1, 86 So.2d 27 (1956) (challenge to the array should be made at the first opportunity as soon as facts warranting such are known); *Arnold v. State*, 171 Miss. 164, 157 So. 247 (1934) (failure to timely raise objection to jury composition

5

acts as a waiver); ***Jackson v. State***, 55 Miss. 530 (1878); ***Gavigan v. State***, 55 Miss. 533 (1878). The Fifth Circuit has also found a ***Batson*** objection untimely in a strikingly similar set of facts. In ***United States v. Erwin***, 793 F.2d 656 (5th Cir. 1986), the defendant moved to strike the jury on the first day of trial before empanelment, but after the venire had been released. The Fifth Circuit held this objection to be untimely and unsupported by precedent. The Court in ***Batson*** envisioned that a motion to strike would be made promptly. Here, the facts strongly suggest that had the defense attorney acted with diligence in raising a timely ***Batson*** challenge, the mistrial could have been avoided. There is no merit to this issue.

> **II.     Whether the State's Justification for its Strikes of the Four Black Female Jurors Defeat Gaskin's *Batson* Challenge Based on the Prosecutor's Use of Strikes in a Pre-textual Manner.**

¶14.     In the second proceeding, Gaskin again raised a ***Batson*** challenge. The State struck four black females, citing that two of the four were acquaintances of Monica Cox, who works in the public defender's office. For the third strike, the State explained that the juror appeared hostile and did not pay attention during voir dire. Lastly, the State offered that it struck one of the women because she is a college graduate who is unemployed and that her last name is Pugh and that the District Attorney is currently prosecuting twelve defendants with the last name Pugh.

¶15.     Gaskin argues that the State's reasons were pretextual. He argues that in both proceedings the State used its peremptory strikes in a discriminatory pattern. Gaskin points out that there was at least one other juror (who was not struck) who admitted that he knew the defense attorney personally. However, the trial court judge, in her findings, pointed out that there was no example of a white juror who knew Monica Cox. With regard to the third juror, Gaskin argues that there is no record support that she appeared hostile, did not pay attention during voir dire and failed to respond to any questions. The trial judge, in her findings, did not indicate whether or not she noticed this juror's demeanor; however, she did

note that the State's argument seemed reasonable. Gaskin also notes that there were other jurors who also failed to respond to any question, but were not struck. Finally, Gaskin argues that the State produced no evidence that the juror Pugh was related to any of the Pughs being prosecuted by the State and that when asked, Pugh did not respond that she was related to anyone who had been in jail or arrested, etc. Gaskin also notes that the State failed to voir dire any of these jurors on the specific subjects that it later used as reasons for striking them.

¶16.     On remand to the trial court for an on-the-record, factual determination of the merits of the reasons cited by the State, the trial court responded that it did not find the State's reasons pretextual and that nothing indicated that the State had an underlying discriminatory motive for the strikes.

¶17.     On the issue of *Batson* challenges and the decisions as to race-neutral reasons, this Court has held:

> [R]eversal will only occur if the factual findings of the trial judge are "clearly erroneous or against the overwhelming weight of the evidence." "On appellate review, the trial court's determinations under ***Batson v. Kentucky*** are accorded great deference because they are based, in a large part, on credibility." The term "great deference" has been defined in the ***Batson*** context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. ***Caston v. State***, 823 So.2d 473, 498 (Miss.2002).

***Minor v. State***, 831 So.2d 1116, 1121 (Miss. 2002). The trial court's acceptance of the State's reason as race-neutral is not clearly erroneous. The State offered employment status, hostile demeanor, friends or acquaintance of defense team, and that one juror has the same last name as twelve individuals being prosecuted in Jackson County. The validity of some variations of these reasons have been addressed by this Court before. *See **Walker v. State***, 671 So.2d 581, 628 (Miss. 1995); ***Davis v. State***, 660 So.2d 1228, 1242 (Miss. 1995).

¶18.     We therefore find that this does not rise to the level of manifest error and that the decision of the trial court must be affirmed.

7

**CONCLUSION**

¶19.    Although the trial court issued an order reciting that the jury had been empaneled and duly sworn, the transcript reflects that the jury was not sworn. Therefore, when a mistrial was declared after this point in the proceedings, Gaskin was not put in jeopardy. Further, because Gaskin failed to make a timely *Batson* objection and considering the position in which this trial judge found herself, she did not abuse her discretion in declaring a mistrial and the action did not preclude Gaskin from being tried in the subsequent proceedings.

¶20.    Finally, the trial court's acceptance of the State's reason as race-neutral is not clearly erroneous where the State offered employment status, hostile demeanor, friends or acquaintance of defense team, and that one juror has the same last name as twelve individuals being prosecuted in Jackson County. Accordingly, we affirm the judgment of the trial court and the Court of Appeals.

¶21.    **AFFIRMED.**

**WALLER, P.J., COBB, EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. PITTMAN, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**