928 So.2d 894 (2005)
Reta LAWRENCE a/k/a Reta Faye Lawrence, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01061-COA.
Court of Appeals of Mississippi.
October 18, 2005.
Rehearing Denied May 16, 2006.
*895 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. Reta Lawrence was convicted by a George County jury of transfer of a controlled substance. Feeling aggrieved, Lawrence appeals her conviction, arguing: (1) that her trial took place outside the 270-day statutory time limit; (2) that the jury in her case was never placed under oath; and (3) that the State failed to meet its burden of proof in her case because it did not prove that Oxycodone is a Schedule II controlled substance.
¶ 2. We find no reversible error and therefore affirm Lawrence's conviction and sentence.

FACTS
¶ 3. On May 18, 2000, Reta Lawrence was arrested for transferring Oxycodone, a controlled substance. Lawrence transferred thirty-seven pills, later determined to be Oxycodone, to undercover police officer Antoine Battle during a police sting operation. Lawrence was indicted by a George County grand jury on January 16, 2001, for transfer of a controlled substance. Lawrence was arraigned on April 23, 2001. Her trial began on February 3, 2004, nearly three years after her arraignment.
¶ 4. At trial, Jason Alexis, the Mississippi Crime Laboratory analyst who examined the pills taken during Lawrence's arrest, was called to testify for the State. Alexis testified that he had tested the pills and found them to contain Oxycodone and aspirin. Defense counsel did not cross *896 examine Alexis as to this finding. Lawrence moved for a directed verdict after the State rested, but her motion was denied. She then testified in her own defense, admitting that she had been at the scene of the crime, but denying that she had transferred any substance to Battle. After the defense rested its case, the jury retired to deliberate and returned a verdict of guilty. Additional facts follow as necessary below.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) The 270-day Statute
¶ 5. Under Mississippi statutory law, a criminal trial must begin no more than 270 days after a defendant's arraignment, unless good cause is shown and the court grants leave for the delay. Miss. Code Ann. § 99-17-1 (Rev.2000). In Lawrence's case, approximately 1,015 days passed between the date of her arraignment and trial. Only delays that a defendant is responsible for count against the defendant in determining whether her trial has started within the statutory time limit. Baine v. State, 604 So.2d 258, 264 (Miss. 1992). In other words, although there were over 1,000 days between Lawrence's arraignment and her trial, the time period may still be within the statutory limit if Lawrence was responsible for enough of those delays. For the reasons below, we find that the prosecution was responsible for less than 270 days of the time between Lawrence's arraignment and trial, and therefore affirm the finding of the court below.
¶ 6. The State concedes that it is responsible for 212 days of the delay between Lawrence's arraignment and her trial. Therefore, if the State is responsible for fifty-nine more days, Lawrence's trial will have been in violation of the statutory limit. Especially disputed by Lawrence and the State is a set of days in April or July of 2002. This disputed time period would be sufficient to place the case over the statutory limit if construed against the State. The State claims that the disputed delay was the result of the State's reasonable belief that Lawrence might negotiate a plea bargain. Lawrence contests this characterization and argues that she should not be held accountable for the time absent a clear explanation in the record of the reason for the delay. At particular issue below was an audiotape that Lawrence argued might shed light on the reason behind the 2002 delay. Lawrence has not supplied any additional evidence on appeal regarding the audiotape in question, nor has she otherwise explained the delay. Absent additional evidence showing that the delay was not for good cause, we defer to the trial court's finding that good cause existed for the delay. As stated by the Mississippi Supreme Court: "A finding of good cause is a finding of ultimate fact, and should be treated on appeal as any other finding of fact; it will be left undisturbed where there is in the record substantial credible evidence from which it could have been made." Walton v. State, 678 So.2d 645, 648 (Miss.1996).
¶ 7. Lawrence urges us to find that several of these delays should not count against her because her express agreement to them does not appear in the record. These delays were all asked for or authorized by Lawrence's counsel. Lawrence cites no authority for her position that these delays should not be counted against her. Since we know of no legal precedent that allows Lawrence relief on this point, we find no error.
¶ 8. As a last point, Lawrence asks us to reverse and remand her case for a hearing where the State will have to show that there has been no prejudice to Lawrence before it can retry her. She bases this *897 request on State v. Harrison, 648 So.2d 66 (Miss.1994). Harrison only applies, however, when there is a clear violation of the 270-day statute: "We need not apply our more recent case of State v. Harrison.. . . Harrison was a case involving a clear violation of the 270-day statute, whereas the case sub judice absolutely is not." McGhee v. State, 657 So.2d 799, 805 (Miss. 1995). As in McGhee, the case before us is not a clear violation of the 270-day statute. The hearing prescribed by Harrison only applies once it has been determined that the 270-day statute has been violated. The record in Lawrence's case shows that the 270-day statute has not been violated; therefore, Harrison has no relevance to our decision.
¶ 9. Lawrence has not appealed on the basis of her constitutional right to a speedy trial, so we do not address that issue here.

(2) Alleged Lack of Oath Given to Jury
¶ 10. Lawrence argues that her conviction should be overturned because the trial court failed to administer the petit juror's oath (or any other oath) as required by Mississippi Code Annotated section 13-5-71 (Rev.2002).[1] Lawrence contends that this alleged lack of an oath violated her fundamental rights and constitutes plain error such that we must reverse. Since Lawrence failed to object to any lack of oath at trial, she must prove that the lack of jury oath constitutes plain error: "This Court has held that a party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred." Williams v. State, 794 So.2d 181, 187 (¶ 23) (Miss.2001). Plain error is found when there is "an error . . . that . . . resulted in a manifest miscarriage of justice. Further, this Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights." Id. (citations omitted). In other words, for Lawrence to prevail on appeal, this Court would have to find: (1) that there was error (in this case, that there was no oath given); (2) that the error resulted in a manifest miscarriage of justice; and (3) that the error affected one of Lawrence's substantive or fundamental rights.
¶ 11. For there to be plain error in Lawrence's case, Lawrence would have to show that there was no oath given to the jury. In order to prove this, Lawrence must overcome a rebuttable presumption that the judge in her case properly performed his duties by placing the jury under oath. Young v. State, 425 So.2d 1022, 1025 (Miss.1983). In Woulard v. State, a boilerplate warning was sufficient to show that the jury had been sworn, even when the record did not reflect whether the jury was sworn. Woulard v. State, 832 So.2d 561, 567 (¶¶ 24-25) (Miss.Ct.App.2002). A similar boilerplate warning was present in Lawrence's case, and there are references throughout the record by the judge, prosecutor and even Lawrence's own counsel to an oath being given. Therefore, Lawrence has not presented any evidence sufficient to overcome the presumption that the judge properly performed his duties in swearing the jury.
¶ 12. Lawrence contends that Gaskin v. State, 873 So.2d 965 (Miss.2004) requires us to find that there was no oath given to the jury in her case. In Gaskin v. State, a jury was chosen; the defendant then *898 raised a successful Batson challenge, and a mistrial was declared. Id. at 967 (¶ 9). The defendant was retried and, on appeal, claimed that his double jeopardy rights had been violated because of a boilerplate statement in the mistrial order that the jury had been empaneled and sworn. Id. at (¶ 7). In fact, it was clear in Gaskin that the jury had never been sworn; as a result, the Mississippi Supreme Court declared that jeopardy had never attached. Id. at (¶ 12). Lawrence would have us read this case as providing relief for her because there is a boilerplate statement that the jury was administered an oath in her record, but no transcription of the actual jury oath. We believe that the holding of Gaskin would have to be seriously strained to provide relief for Lawrence.
¶ 13. In Gaskin, the record was completely void of any reference to an oath given to the jury, and in fact, when the trial court was required to supplement the record on the issue of whether an oath had been given to the jury, the unequivocal finding was that no jury had been sworn. Gaskin, 873 So.2d at (¶ 12). The record and the boilerplate oath statement in Gaskin contradicted each other; there is no contradiction in the case at bar. Here, the prosecutor, judge, and Lawrence's counsel all referred to the oath given to the jury throughout the proceedings. The record merely corroborates what the boilerplate warning states.
¶ 14. Since Lawrence has failed to provide evidence sufficient to prove that no oath was administered in her case, no reversal is required.

(3) Oxycodone as a Schedule II Controlled Substance
¶ 15. Lawrence's last argument is that her conviction should be reversed because the State failed to prove that Oxycodone is a controlled substance. The statute that Lawrence was charged and convicted under makes it a crime for anyone to "sell, barter, [or] transfer ... a controlled substance." Miss.Code Ann. § 41-29-139(a)(1) (Rev.2001). This section does not define what constitutes a "controlled substance," but other sections of the code delineate some substances as controlled substances. For example, Oxycodone is listed as a controlled substance under Schedule II of the Mississippi Code. Miss.Code Ann. § 41-29-115(A)(a)(1)(xiv) (Rev.2001). No testimony was offered by the State to prove that Oxycodone is a Schedule II controlled substance. Therefore, the real question before us is whether the State must have shown that Oxycodone is a Schedule II controlled substance as Lawrence urges or whether the State needed only to prove that the substance in question is a statutorily controlled substance.
¶ 16. The Mississippi Supreme Court has previously addressed this issue. In Thomas v. State, a defendant appealed his conviction on the grounds that the State proved only that the defendant possessed Diazepam, but did not prove that Diazepam was a controlled substance. Thomas v. State, 377 So.2d 593, 594 (Miss.1979). The court held:
[I]t is argued that there was no testimony that the drug involved was a controlled substance, and that, therefore, appellant's motion for a directed verdict at the conclusion of the state's case in chief should have been sustained . . . . We, however, find no merit in the contention. At the date of the alleged crime ... Diazepam was a controlled substance. Proof that the sale and delivery was of diazepam sufficiently showed a sale and delivery of a controlled substance.
*899 Id. This holding has been affirmed by a more recent Mississippi Supreme Court case. In Hart v. State, 639 So.2d 1313 (Miss.1994), a defendant's conviction for possession of marijuana was upheld even though the State had not actually proved that marijuana was a Class I controlled substance.[2] These two cases make it clear that when a defendant is charged with possession of a specific substance that is defined by statute as a "controlled" substance, the State need only prove that the substance is one that is listed in the schedules. Therefore, even though the State in Lawrence's case did not offer any testimony as to the Schedule II classification of Oxycodone, the State still proved all the essential elements of its case. By proving that the pills that Lawrence transferred were Oxycodone, the State proved that Lawrence transferred a controlled substance, because Oxycodone is in fact a Schedule II controlled substance. The designation of Oxycodone as a controlled substance was not a question of fact for the jury.
¶ 17. Lawrence urges us to consider Copeland v. State as providing support for Lawrence's contention that the State was required to prove that Oxycodone is in fact a Schedule II controlled substance. Copeland, however, provides no relief for Lawrence. In Copeland, the State failed to include "3, 4" before the name of the specific substance in question. Copeland v. State, 423 So.2d 1333, 1336 (Miss.1982). The court relied on a Fifth Circuit case that determined that the same omission meant that the State had failed to allege a crime since the chemical name without the "3, 4" was not a statutorily controlled substance. Id. at 1336-37 (citing United States v. Huff, 512 F.2d 66 (5th Cir.1975)). The same is not true in Lawrence's case. Oxycodone is the full chemical name of the substance that Lawrence transferred. Copeland would only provide relief to her if the chemical name listed in Schedule II was different from the chemical name alleged in the indictment and proved at trial. Since it is not, we rely on Thomas and Hart and hold that the State proved all the essential elements necessary for Lawrence's conviction.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY OF CONVICTION FOR TRANSFER OF A CONTROLLED SUBSTANCE AND SENTENCE OF THIRTEEN YEARS WITH FIVE YEARS SUSPENDED AND EIGHT TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND A FINE OF $5,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GEORGE COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR. ISHEE, J., NOT PARTICIPATING.
NOTES
[1] The language of the oath given in the statute reads as follows: "You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your decision by the court, during the present term, and true verdicts give according to the evidence. So help you God."
[2] "[The Mississippi Code] clearly provides that marijuana is a Schedule I controlled substance. The indictment charged Hart with possession ... of marijuana, a Schedule I controlled substance. Timothy Gross, forensic scientist and expert in drug identification, testified that ... the substance ... was marijuana." Hart, 639 So.2d at 1318. The Court then went on to cite and quote from Thomas in holding that Hart was not entitled to relief on appeal.