6 So.3d 35 (2008)
Benjamin Chadwick PATTERSON
v.
STATE of Alabama.
CR-06-1793.
Court of Criminal Appeals of Alabama.
April 4, 2008.
Rehearing Denied May 23, 2008.
Certiorari Denied September 12, 2008 Alabama Supreme Court 1071230.
*36 John C. Robbins, Birmingham, for appellant.
Troy King, atty. gen., and Jack W. Willis, asst. atty. gen., for appellee.
PER CURIAM.
The appellant, Benjamin Chadwick Patterson, was convicted of trafficking in illegal drugs, a violation of § 13A-12-231(3), Ala.Code 1975, and failure to affix tax stamps, a violation of § 40-17A-4, Ala. Code 1975. The circuit court sentenced Patterson to serve concurrent terms of 25 years in prison on the trafficking conviction and 2 years in prison on the failure to affix tax stamps conviction. It also imposed a $500,000 fine on the trafficking conviction pursuant to § 13A-12-231(3)c., Ala.Code 1975. This appeal followed.
The State's evidence tended to show that on January 31, 2006, Officer Jason Marlin of the Birmingham Police Department stopped a burgundy 2003 Chevy Tahoe sport utility vehicle at the Best Western Hotel parking lot on University Boulevard. Jason Lee was driving the vehicle; Patterson was in the front passenger seat. When Officer Marlin opened the passenger side door he saw Patterson attempting to conceal a plastic bag. He tried to stuff the bag between the seat and the console. When Officer Marlin searched the vehicle he found a plastic bag containing a large number of pills. The certificate of analysis indicated that the bag contained 91 tablets, that the tablets contained oxycodone, and that they weighed 39.40 grams.

I.
Patterson first argues that the State did not present sufficient evidence to support his conviction for trafficking because it did not prove that oxycodone is an illegal drug pursuant to § 13A-12-231(3), Ala.Code 1975.
The indictment returned against Patterson alleged that Patterson

*37 "did knowingly sell, manufacture, deliver, or bring into this state, or was knowingly in actual or constructive possession of any morphine, opium, or any salt, isomer or salt of an isomer, to-wit: 28 grams or more, but less than 56 grams of oxycodone or of a mixture containing oxycodone, a controlled substance, in violation of Section 13A-12-231 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama."
(C.R. 22.)
Section 13A-12-231(3), Ala.Code 1975, states:
"Any person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, four grams or more of any morphine, opium, or any salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 20-2-23(2) or Section 20-2-25(a)a., or four grams or more of any mixture containing any such substance, is guilty of a felony, which felony shall be known as `trafficking in illegal drugs.' If the quantity involved:
"....
"c. Is 28 grams or more, but less than 56 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years and to pay a fine of five hundred thousand dollars ($500,000)."
(Emphasis added.)
In this case the State introduced a certificate of analysis that was admitted by stipulation of the parties. The certificate indicated that the evidence in this case was "one (1) plastic packet holding ninety-one (91) white tablets imprinted `Endo 602,' weighing 39.40 grams." (C.R. 65.) The results section of the report stated: "Oxycodone [a C-II controlled substance]."
Section 20-2-20(a), Ala.Code 1975, states: "The State Board of Health, unless otherwise specified, shall administer this chapter and may add substances to or delete or reschedule all substances enumerated in the schedules in Section 20-2-23, 20-20-25, 20-2-27, 20-2-29, or 20-2-31 pursuant to the procedures of the State Board of Health." Schedule II of the list of controlled substances promulgated by the State Board of Heath, included in the Alabama Administrative Code Department of Public Health Chapter 420-7-03, Opp., Schedule II, in effect at the time of the offense reads as follows:
"(1) Opium and opiate, and any salt, compound, derivative, or preparation of opium and opiate, excluding apomorphine, thebaine-derived butorphanol, dextrorphan, nalbuphine, nalmefene, naloxone, and naltrexone, and their respective salts, but including the following:
"1. Raw opium....
"2. Opium extracts....
"3. Opium fluid extracts....
"4. Powdered opium....
"5. Granulated opium....
"6. Tincture of opium....
"7. Codeine....
"8. Dihydroetorphine....
"9. Ethylmorphine....
"10. Etorphine hydrochloride....
"11. Hydrocodone....
"12. Hydromorphone....
"13. Metopon....
"14. Morphine....
"15. Oxycodone....
"16. Oxymorphone....
"17. Thebaine...."
Section 20-2-2(16), Ala.Code 1975, defines "opiate" as:
"Any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of *38 conversion into a drug having addiction-forming or addiction-sustaining liability. Such term does not include, unless specifically designated as controlled under this section, the dextrorotatory isomer of 3-methoxy-n-methylmorphinan and its salts (dextromethorphan). Such term does include its racemic and levorotatory forms."
See also Chapter 420-7-2-.02(6), Ala. Admin. Code (Department of Public Health).
An opiate is "a drug ... containing or derived from opium." Merriam-Webster's Collegiate Dictionary 870 (11th ed.2003).[1] Section 13A-12-231(3), specifically provides that "[a]ny person who knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, four grams or more of any morphine, opium, or any salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 20-2-23(2) or Section 20-2-25(1)a., or four grams or more of any mixture containing any such substance is guilty of a felony, which felony shall be known as `trafficking in illegal drugs.'" (Emphasis added.) Section 20-2-25, Ala.Code 1975, is a list of Schedule II controlled substances adopted by the legislature, and § 20-2-25(1)a. lists "[o]pium and opiate and any salt, compound, derivative or preparation of opium or opiate." (Emphasis added.) Although § 13A-12-231(3) does not specifically list opiates it does specifically include opiates by its reference to § 20-2-25(1)a. This Court has previously recognized that opiates are included within the prohibition in § 13A-12-231(3). See Sharpe v. State, 710 So.2d 1373 (Ala.Crim.App.1997).
Thus, the State was not required to present scientific evidence that oxycodone is actually opium to prove its case. Because oxycodone is included in the list of Schedule II controlled substances adopted by the Board of Health under the designation "opium and opiate" and § 13A-12-231(3) specifically prohibits trafficking in "any morphine, opium, or any salt, isomer, or salt of an isomer thereof ... as described in ... Section 20-2-25(1)a.," which includes any "[o]pium and opiate and any salt, compound, derivative or preparation of opium or opiate," § 20-2-25(1)a., oxycodone is, as a matter of law, an opium or opiate included within the prohibition in § 13A-12-231(3). The certificate of analysis, which the parties stipulated to and which reflects that the pills in Patterson's possession were oxycodone, was sufficient to establish a prima facie case of trafficking in illegal drugs under § 13A-12-231(3).
Our neighboring state of Mississippi has reached the same conclusion. In Lawrence v. State, 928 So.2d 894 (Miss.Ct.App. 2005), the Mississippi Court of Appeals stated:
"[W]hen a defendant is charged with possession of a specific substance that is defined by statute as a `controlled' substance, the State need only prove that the substance is one that is listed in the schedules. Therefore, even though the State in Lawrence's case did not offer any testimony as to the Schedule II classification of Oxycodone, the State still proved all the essential elements of its case. By proving that the pills that Lawrence transferred were Oxycodone, the State proved that Lawrence transferred a controlled substance, because Oxycodone is in fact a Schedule II controlled substance. The designation of *39 Oxycodone as a controlled substance was not a question of fact for the jury."
928 So.2d at 899. The State presented sufficient evidence to support Patterson's conviction for trafficking in 39.40 grams of oxycodonea Schedule II controlled substance.

II.
Patterson next argues that his sentence of 25 years' imprisonment, the mandatory minimum sentence provided by statute, is grossly disproportionate to the crime committed and violates the Eight Amendment to the United States Constitution. He cites this Court's decision in Wilson v. State, 830 So.2d 765 (Ala.Crim. App.2001).
In Wilson, a majority of this Court held that Wilson's sentence of life imprisonment without the possibility of parole for selling 97.8 grams of a mixture containing morphine, Wilson's first offense, was grossly disproportionate to the crime she had committed. The court in Wilson adopted the test first articulated by the United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and later relied on in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Under that test, we must examine: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other defendants in the jurisdiction; and (3) the sentences imposed in other jurisdictions.
In this case, Patterson admitted that he used drugs frequently, that he would buy enough oxycodone to last two or three days, and that he took seven or eight pills a day. In 2003, he was arrested for possessing 35 "ecstasy" pills. In 2004, he was arrested for possessing seven bags of a substance containing methamphetamines. The mandatory 25-five year sentence for trafficking is the highest mandatory minimum imposed in the State for any crime other than a capital offense. Last, other states impose similar sentences for the same offense. See § 893.135, Florida Statutes 1991; S.C.Code Ann. § 44-53-370(e)(2)(c); Va.Code Ann. § 18.2-248(c); Ga.Code Ann. § 16-13-31.
In Paey v. State, 943 So.2d 919 (Fla. Dist.Ct.App.2006), a Florida District Court of Appeals stated:
"The Florida statutes addressing the subject demonstrate that the legislature considers oxycodone to be a potentially dangerous substance. Section 893.03 contains standards and schedules for controlled substances. Oxycodone, a derivative of opium, is listed as a Schedule II substance. § 893.03(2)(a)(1)(o). `A substance in Schedule II has a high potential for abuse' and `abuse of the substance may lead to severe psychological or physical dependence.' § 893.03(2)(a). Because of oxycodone's high potential for abuse and the effects of such abuse, the Florida Legislature could rationally conclude that the threat posed to the individual and to society by possession of at least twenty-eight grams of oxycodone is sufficient to warrant the deterrent and retributive effect of a twenty-five-year mandatory minimum sentence.
"....
"The twenty-five-year mandatory minimum prison sentence the Florida Legislature prescribed in section 893.135(1)(c)(1)(c) for trafficking in twenty-eight or more grams of oxycodone falls within the outer limits of a rational weighing of the alternatives concerning an appropriate prison term for this offense. This is not one of those rare cases in which the sentence imposed is so grossly disproportionate in comparison to the crime committed that it is cruel and unusual. For this reason, *40 we hold that Mr. Paey's sentences for trafficking in oxycodone do not violate the Eighth Amendment's prohibition against cruel and unusual punishments."
943 So.2d at 924-26. Patterson's sentence does not violate the Eighth Amendment to the United States Constitution.

III.
Patterson last argues that the State engaged in selective prosecution by not allowing him to plead guilty to possession of a controlled substance. Specifically, he asserts that he should have been offered the same deal as his codefendant, Jason Lee. Lee was allowed to plead guilty to possession of a controlled substance in exchange for a two-year sentence.
"`"[A] defendant who alleges an equal protection violation has the burden of proving ... `the existence of purposeful discrimination.'" McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987).
"`"This court has previously held that, although no clear standards exist for quantum or type of proof sufficient to illustrate discriminatory enforcement of a statute ..., three elements must generally be proved: selectivity in enforcement; selectivity that is intentional; and selectivity based upon some invidious or unjustifiable standard such as race, religion, or other arbitrary classification. It is insufficient merely to show that other violators have not been prosecuted, that there has been laxity in enforcement, or that there has been conscious exercise of some selectivity in enforcement."
"`DeShazo v. City of Huntsville, 416 So.2d 1100, 1103 (Ala.Cr.App.1982) (emphasis added). See also Carroll v. State, 599 So.2d 1243, 1244-45 (Ala.Cr.App. 1992).'"
Wild v. State, 761 So.2d 261, 263 (Ala. Crim.App.1999), quoting Facion v. State, 627 So.2d 1144, 1145 (Ala.Crim.App.1993).
The record is totally devoid of the elements necessary to show selective prosecution. There is no indication as to why the State offered Lee the plea agreement. Patterson failed to meet his burden of proof. Thus, he is due no relief on this claim.
For the foregoing reasons, Patterson's convictions are due to be affirmed.
AFFIRMED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur; BASCHAB, P.J., dissents, with opinion.
BASCHAB, Presiding Judge, dissenting.
Because I disagree with the majority's conclusion that the State was not required to present scientific evidence that oxycodone is actually opium and its conclusion that, because oxycodone is included in the Schedule II list of controlled substances, it is, as a matter of law, included within the prohibition in § 13A-12-231(3), Ala.Code 1975, I must respectfully dissent.
Schedule II lists oxycodone under an umbrella category of opium and opiates. However, § 13A-12-231(3), Ala.Code 1975, does not specifically include opiates. Rather, it includes only opium-based substances and morphine. Further, the definition of an opiate as set forth in Chapter 420-7-2-.02(6), Ala. Admin. Code (Department of Public Health) does not require that a substance actually contain opium.[2] *41 Because Schedule II does not include detailed information regarding the nature of the substances included under the umbrella term of opium and opiates, it is inappropriate for this court to rely solely on the list of Schedule II substances to conclude that oxycodone is an illegal drug under § 13A-12-231(3), Ala.Code 1975. For example, morphine is included in the Schedule II list of opium and opiates. However, § 13A-12-231(3), Ala.Code 1975, specifically designates morphine as an illegal drug under that section. This implies that the mere fact that morphine is included on the Schedule II list of opium and opiates does not necessarily dictate a finding that it contains opium and would otherwise be included in § 13A-12-231(3), Ala.Code 1975.
Also, I do not believe that Lawrence v. State, 928 So.2d 894 (Miss.Ct.App.2005), supports the majority's holding. Lawrence does not address the burden of proof in a prosecution for trafficking in illegal drugs. Rather, it involves a conviction for transferring a controlled substance. In that case, Lawrence argued that, even though oxycodone was on the list of controlled substances, the prosecution must still prove that it was, in fact, a Schedule II controlled substance. The Mississippi Court of Appeals held that, "when a defendant is charged with possession of a specific substance that is defined by statute as a `controlled' substance, the State need only prove that the substance is one that is listed in the schedules." Lawrence, 928 So.2d at 899. Of course, inclusion on a list of controlled substances would obviate the need to prove that the substance is indeed a controlled substance. Although Lawrence supports a general proposition of law regarding substances that are included in the schedules of controlled substances, it does not address the specific issue here.
Accordingly, even though oxycodone is included in Schedule II under opium and opiates, the State must still prove that it is either opium; a salt, isomer, or salt of an isomer of opium; or a mixture containing opium. Because the State did not present any evidence that oxycodone is actually opium; a salt, isomer, or salt of an isomer of opium; or a mixture containing opium in this case, it did not prove that the appellant committed the offense of trafficking in illegal drugs pursuant to § 13A-12-231(3), Ala.Code 1975. Therefore, we should reverse his conviction and sentence for trafficking in illegal drugs and render a judgment in his favor.
NOTES
[1] Morphine is also a derivative of opium. See Merriam-Webster's Collegiate Dictionary 808 (11th ed.2003) (defining morphine, in pertinent part, as "the principal alkaloid of opium"). See also Felder v. State, 420 So.2d 851, 851 (Ala.Crim.App. 1982) ("Alabama case law recognizes Dilaudid as a derivative of morphine which is a derivative of opium.").
[2] Because the Alabama Department of Public Health's Administrative Code sets forth a definition of opiate, I believe it is inappropriate to rely on outside resources for a definition. However, I note that other resources use various definitions for the term "opiate." MedicineNet.com defines the term "opiate" as "[a] medication or illegal drug that is either derived from the opium poppy, or that mimics the effect of an opiate (a synthetic opiate)." Answers.com Health defines the term "opiate" as:

"1. Any of various sedative narcotics containing opium or one or more of its natural or synthetic derivatives.
"2. A drug, hormone, or other chemical substance having sedative or narcotic effects similar to those containing opium or its derivatives: a natural brain opiate. Also called opioid.
"3. Something that dulls the senses and induces relaxation or torpor."