# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-02261-SCT

*CHRISTOPHER JOHNSON a/k/a CHRIS JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/2005 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | M. A. BASS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DESHUN TERRELL MARTIN |
| DISTRICT ATTORNEY: | ALEXANDER C. MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/01/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.     On November 1, 2005, Christopher Johnson ("Johnson") was indicted by a Copiah County Grand Jury for the sale of cocaine pursuant to Miss. Code Ann. § 41-29-139 (Rev. 2005). Johnson entered a plea of not guilty.

¶2.     On November 27, 2005, Johnson was offered a plea agreement for a sentence of eight years, with two years suspended and six years to serve. Johnson rejected this plea agreement.

On the day of trial, Johnson was offered a different plea agreement for a sentence of ten years, with six years suspended and only four years to serve. Johnson rejected the second plea offer. Johnson's signature acknowledged that he understood that when he rejected the plea agreements, he would be tried, and if convicted, he could be sentenced to serve thirty years and receive a fine of up to one million dollars.

¶3. Johnson exercised his right to a jury trial. After the State rested, Johnson moved for a directed verdict, arguing that the State failed to make a prima facie case. This motion was denied. Upon completion of trial, Johnson was found guilty of the sale of cocaine. The trial judge ordered a pre-sentencing investigation before sentencing Johnson. After the results of this investigation were presented, the court sentenced Johnson to thirty years, with eighteen years to serve, twelve years suspended, with post-release supervision for five years. Subsequent to sentencing, Johnson filed a Motion for New Trial, which was denied by the trial judge. Subsequently, Johnson filed this appeal, and Johnson presents the following issues:

> 1) The trial court erred in not granting Johnson's Motion for Directed Verdict, as the verdict was against the overwhelming weight of the evidence and was a result of bias, prejudice and passion.
>
> 2) That a sentence of thirty years, eighteen years to serve, with twelve years suspended, with five years of post-release supervision, is tantamount to a life sentence.

**STATEMENT OF THE FACTS**

¶4. The Mississippi Bureau of Narcotics ("MBN") was conducting a drug investigation

in Copiah County, Mississippi, with the use of an undercover agents, Agent 1,[1] and a confidential informant, ("CI"). The agent in charge of the investigation, Agent 2, had approximately twenty years of experience.

¶5.     The CI was a Coded Confidential Informant, which meant he was not assisting the MBN in order to gain a reduced sentence for a crime, but rather was paid for his services. During his testimony, the CI admitted an adjudication of a misdemeanor when he was a minor, which involved the theft of apparel and sporting goods.

¶6.     According to Agent 2's testimony, the CI knew people in the community and was serving because he "was just a good citizen that want[ed] to do [his] part, want to come in and do what [he] can." The CI was paid each time he performed services, although Agent 2 testified that the CI originally was surprised to learn he would be compensated for his services. He was paid differing amounts depending on the type of drugs and participants involved. Agent 2 testified he had no reason to believe the CI needed the money, as he owned a vehicle and a business.

¶7.     The CI informed the MBN he could introduce them to Johnson – that Johnson would sell the CI crack cocaine. On April 27, 2005, an investigation involving Johnson was conducted. The CI was wired with a device to record the transaction and to allow a surveillance team to listen in on the transaction. The MBN gave the CI money to purchase the cocaine.

¶8.     There is a discrepancy in testimony as to whether the CI called Johnson or Johnson

---

[1]Agent 1 and Agent 2, are used for the undercover Mississippi Bureau of Narcotics Agents.

called the CI. Nonetheless, a telephone conversation took place between the CI and Johnson. The CI and Johnson arranged to meet on Adams Street Extension in Crystal Springs, Mississippi. Agent 2 met with the CI and Agent 1. Agent 2 performed a standard "pre-buy" procedure wherein he thoroughly searched the CI's person and vehicle. This was to ensure the integrity of the transaction and to make sure the confidential informant had no money, weapons, narcotics or other contraband prior to the transaction with the suspect. The CI drove his vehicle with Agent 1 in the passenger seat to the designated location. The CI testified Johnson walked up and climbed into the back seat of his vehicle. Agent 1 testified she had the impression that Johnson and the CI already knew each other. Johnson produced the narcotics and the CI inspected them. Upon inspection, the CI told Johnson these drugs "were not the real deal" and told Johnson to call him when he could get "real crack cocaine." Agent 2 testified the CI had received training to identify narcotics.

¶9.     Agent 1 and the CI returned to their "pre-buy" location, where the CI received a telephone call from Johnson stating he now had "real crack cocaine." The CI and his vehicle were searched again using the same pre-buy procedure, and he was again outfitted with a recording device.

¶10.     Agent 1 and the CI returned to the same buy location. Johnson entered the vehicle and sat in the back seat. Johnson produced a Ziploc bag containing crack cocaine. The CI paid Johnson $200 for it, with Agent 1 witnessing the transaction. Agent 1 testified that Johnson stood out in her mind because he was so young and because this was her first crack cocaine buy, as she previously was assigned to crystal methamphetamine buys.

¶11.     Although the CI testified the transaction took only about a minute, the CI recognized

4

Johnson as the seller, as he had known Johnson and his family for years. He stated unequivocally "there was no doubt in his mind" Johnson was the seller.

¶12.    After the transaction, Agent 1and the CI identified Johnson from a six-person photo lineup. Although Agent 2 was not in the car and did not physically see the purchase take place, he listened to the transaction from the wire placed on the CI. An audio of the transaction was introduced into evidence for the jury's consideration. After the jury returned a verdict of guilty against Johnson, the jury was polled, and all twelve jurors confirmed the verdict of guilty.

¶13.    At the sentencing hearing, the State presented evidence that Johnson had previously been convicted of the sale of cocaine, and asked that Johnson's sentence be enhanced to sixty years instead of thirty. Johnson countered that the first sale took place when he was a minor, asking that the court consider his age. The trial court sentenced Johnson to thirty years in prison, with twelve years suspended, and five years of post-release supervision.

## ANALYSIS

I.      **Whether the trial court erred in not granting Johnson's Motion for Directed Verdict**.

In considering whether the evidence is sufficient to sustain a conviction in the face of a motion for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged and that he did so under such circumstances that every element of the offense existed. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005). This inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* If there is sufficient evidence to support a guilty verdict, the motion for a directed

5

verdict must be overruled. *May v. State*, 460 So. 2d 778, 781 (Miss. 1984).

*Mingo v. State,* 2006 Miss. LEXIS 679, *30 (2006).

¶14.    In arguing Issue I, Johnson offers two arguments. Johnson asserts the witnesses testifying against him were not credible and that, without their testimony, the State failed to present a prima facie case. He unpersuasively argues that the State failed to prove beyond a reasonable doubt that he was the person who sold the cocaine to the CI and Agent. Therefore, he believes his Motion for Directed Verdict should have been granted or a peremptory instruction should have been given to the jury.

¶15.    Johnson further asserts that Agent 1was not credible because she was a new employee of the MBN, having been employed for approximately one month prior to the sale, and had not completed training at the Law Enforcement Academy.  The evidence also shows she had a bachelor's degree in Criminal Justice and been through training by officers at the MBN.

¶16.    Agent 1 had been on five previous "drug buy" transactions. Agent 1 observed Johnson on two separate occasions the same day. She could identify what clothing he was wearing and commented on his youth. Agent 1 further stated this was her first buy of crack cocaine and her first buy in Copiah County. Therefore, the transaction stood out in her mind. Finally, Agent 1 selected Johnson's photo out of a six-person lineup.

¶17.    Johnson also argues that the CI lacked credibility and competency to testify. Johnson argues the CI was motivated to testify against Johnson by freedom from criminal charges and money. No evidence was presented to the court to support this assertion.

¶18.    Agent 2 testified that, other than the offense the CI committed as a youth, he had no criminal history. Agent 2 stated the CI was a Coded Confidential Informant and was not

6

acting as an informant in order to gain a reduction or freedom from criminal charges.

¶19. Agent 2 further testified that the CI was employed by his own business, and in Agent 2's opinion, the CI was not acting as a confidential informant for the purpose of monetary gain. Other than his assertion the CI was acting for money, Johnson provided no facts or evidentiary support for the court to consider that the CI was acting as an informant for monetary gain.

¶20. Agent 2 testified the CI "was a good CI," "one of the better" informants he had worked with. The CI testified he had nothing personal against Johnson and that it was not easy for him to testify.

¶21. The trial judge is the gatekeeper of evidence presented to a jury. The testimony of Agent 1 and that of the CI was admissible pursuant to Mississippi Rule of Evidence 602, as they had personal knowledge of the matters to which they testified. *See* M.R.E. 602; *see also* M.R.E. 104(e). Furthermore, the credibility of these witnesses could have been attacked at trial as "[t]he credibility of a witness may be attacked by any party. . . ." M.R.E. 607. The jurors were instructed, "The court has ruled on the admissibility of the evidence; but, you, the Jury, are the sole judges of the facts. As sole judges of the facts, your exclusive province is to determine what weight and credibility will be assigned the testimony and supporting evidence of each witness." The judge and jury obviously accepted the credibility of these witnesses, and this Court finds no legal basis to reverse their decision. Furthermore,

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,' the proper remedy is for the appellate court to reverse and render.

7

*Miley v. State,* 935 So. 2d 998, 1001 (Miss. 2006) (citations omitted).

¶22.   After viewing the tape of the transaction, and hearing the testimony of two MBN agents, a drug analyst from the Mississippi Crime Laboratory, and the CI, each juror returned a verdict of guilty. The lower court found none of the facts or inferences suggested by Johnson on any element of the offense was such that jurors could not have found him guilty beyond a reasonable doubt. Accordingly, this issue is without merit.

> **II.   Whether a sentence of thirty years, eighteen years to serve, twelve years suspended, with five years of post-release supervision amounts to a life sentence.**
>
> As a general rule, when sentences are within the limits of the statute, the imposition of such sentences is within the sound discretion of the trial court and this Court will not reverse them. . . . Likewise, we have held that providing punishment for crime is a function of the legislature, and, unless the punishment specified by statute constitutes cruel and unusual treatment, it will not be disturbed by the judiciary. *Presley v. State*, 474 So. 2d 612, 620 (Miss. 1985). We review sentences in light of the factors articulated by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." *Nichols v. State*, 826 So. 2d 1288, 1290 (Miss. 2002). Generally, sentences that do not exceed the maximum term allowed by statute will not be considered grossly disproportionate and will not be disturbed on appeal. *Fleming v. State*, 604 So. 2d 280, 302-03 (Miss. 1992).

*Mingo,* 2006 Miss. LEXIS at *32-33.

¶23.   Johnson asserts his rights under Article 3, sections 14, 26 and 28 of the Mississippi Constitution and under the 5th, 6th, 8th and 14th Amendments to the United States Constitution have been violated by his sentence. Johnson argues that the "eighteen years to serve" provision of his sentence is tantamount to a life sentence, considering he is only twenty years of age. Johnson further argues the sentence subjects him to "overcrowding,

8

unsanitary conditions and makes him a victim of physical crimes," and therefore, is cruel and inhuman[e].

¶24.    Johnson was convicted for the sale of cocaine under Miss. Code Ann.§ 41-29-139 and received the maximum sentence of thirty years, albeit twelve years were suspended, and the trial judge did not follow the State's recommendation to enhance the sentence an additional thirty years. "We have never found a maximum penalty in a drug case – even if the sentences were to run consecutively – to be cruel and unusual punishment." *Braxton v. State,* 797 So. 2d 826, 829 (Miss. 2000) (quoting *Herring v. State*, 691 So. 2d 948, 958 (Miss. 1997)). Furthermore, "[i]t is the prerogative of the Legislature to determine the appropriate sentence for crimes" and Johnson's sentence comes within the purview of the statute. *Herring v. State,* 691 So. 2d 948, 950-51 (Miss. 1997).

¶25.    The sentence imposed by the trial court was within the statutory limitation and was within the sound discretion of the learned trial judge. Further, this Court has previously determined it is the Legislature's function to determine punishment and, "[w]e have said that thirty years is not cruel and unusual punishment for drug charges," *i.e.,* not violative of the United States or Mississippi Constitution.  *Bell v. State,* 797 So. 2d 945, 950-51 (Miss. 2001); *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Accordingly, this issue brought by Johnson has no merit.

## CONCLUSION

¶26.    The judgment of the trial court is affirmed.

¶27. **CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF THIRTY (30) YEARS, WITH  EIGHTEEN (18)  YEARS TO SERVE, TWELVE (12) YEARS SUSPENDED, WITH  POST-RELEASE  SUPERVISION  FOR  FIVE  (5)  YEARS,**

9

**WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON, AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**