GRAVES, Presiding Justice,
Concurring in Part and Dissenting in Part:
¶ 45. I agree with the majority’s findings regarding all issues except the first issue: whether the State presented sufficient evidence to support the jury’s verdict that Williams had sexually battered his younger daughter, Ann. The record reveals that there was sufficient evidence to support such a finding. In addition to the medical evidence consistent with sexual abuse brought forth through Dr. Marcy’s testimony, the jury had the opportunity to observe the testimony of the three individuals, including Williams, who had cared for Ann before she was placed in foster care. Based on the substance of the expert and lay witness testimony, as well as on observation of the witnesses’ demeanors, it was reasonable for the jury to conclude that Williams had sexually battered Ann.
¶ 46. An inquiry into whether evidence is sufficient to sustain a conviction “does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Johnson v. State, 950 So.2d 178, 182 (Miss.2007). Rather, as the majority notes, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. See also Moore v. State, 996 So.2d 756, 760 (Miss.2008). This Court must accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom. Moore, 996 So.2d at 760.
¶47. The jury determines the weight and credibility to give witness testimony and other evidence. Massey v. State, 992 So.2d 1161, 1163 (Miss.2008). This Court may not “pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.” Id. (quoting Davis v. State, 568 So.2d 277, 281 (Miss.1990)).
¶ 48. A rational trier of fact could have found that the essential elements of the crime of sexual battery of Ann were established beyond a reasonable doubt. The jury instructions explained the elements of the crime:
The defendant, NICKEY WILLIAMS has been charged in Count II of the indictment with the felony crime of Sexual Battery of [Ann]. If you find from the evidence in this case beyond a reasonable doubt that:
(1) [Ann], at the time of the offense was a child under the age of fourteen (14) years, having a date of birth of April 20, 2005, and
(2) the defendant NICKEY WILLIAMS, at the time of the offense was twenty-four (24) or more months older than [Ann], having a date of birth of October 7, 1973, and
(3) between the dates of April 20, 2005 and February 14, 2006, the defendant, NICKEY WILLIAMS, did willfully, unlawfully and feloniously engage in sexual penetration with [Ann] by inserting a part of his body and/or an unknown object into the anus of [Ann].
then you shall find the defendant, NICKEY WILLIAMS, guilty of Sexual Battery in Count II of the indictment. ...
The first two elements — Ann’s and Williams’ dates of birth — are not in dispute, and a rational trier of fact could find the third element — the sexual penetration of Ann’s anus — to be true beyond a reasonable doubt.
¶ 49. While there is no statement or testimony from Ann because she was only *493 ten months old at the time of the alleged abuse, Dr. Marcy’s medical findings strongly support a finding of sexual battery. Dr. Marcy explained to the jury, using photographs of Ann’s anus taken during his examination of her, that Ann’s anus was inflamed and swollen. He explained that a baby should have linear folds around the anus, radiating out from the middle to the outside, but the swelling and inflammation had caused the folds around Ann’s anus to disappear. Dr. Marcy also testified that a baby’s anus should be round, but due to stretching or swelling, Ann’s anus was an irregular shape. In addition, Ann had a Y-shaped fissure (which is a tear in the skin that reveals the raw tissue underneath) outside the anal opening. Dr. Marcy testified that a very large, hard bowel movement could cause a fissure, but that if it did, it would tend to tear the inside of the anal opening. He explained that the fissure on Ann’s anus, which extended well outside the anal opening, was more likely caused by something being pushed into the anus. The fissure on Ann’s anus would be more consistent with digital penetration than with a bowel movement, he elaborated. Based solely on his physical exam of Ann and not considering any other evidence, such as the evidence indicating that Jane was sexually abused, Dr. Marcy concluded that Ann’s anal injuries were consistent with anal penetration and it was “probable” — the next-to-highest level of suspicion — that Ann had been sexually abused.
¶ 50. While Dr. Marcy may not have testified that Ann’s injuries were consistent with sexual abuse “to a reasonable degree of medical certainty,” as he did regarding Jane’s injuries, his testimony and findings suggest that Ann’s injuries were even more indicative of sexual abuse than Jane’s were. Dr. Marcy concluded that, based solely on the physical evidence, it was “possible” that Jane had been sexually abused, but consideration of other factors, including Jane’s allegations against Williams, led him conclude that it was “probable” that Jane had been sexually abused. In contrast, Dr. Marcy was able to conclude that it was “probable” that Ann had been sexually abused based solely on the physical evidence — i.e., without consideration of any other factors. Therefore, there is no reason to believe that, had Dr. Marcy been asked to phrase his findings regarding Ann in terms of “reasonable degree of medical certainty,” Dr. Marcy would not have stated that Ann too was sexually abused “to a reasonable degree of medical certainty.”
¶ 51. The majority states that Dr. Marcy “couched his opinion (regarding Ann] in terms of suspicion of probability, which, standing alone, absent additional corroborating evidence, is insufficient in a criminal case.” First, the majority is taking the words “suspicion of probable,” stated in Dr. Marcy’s testimony, out of context. As can be seen in the quoted portion of Dr. Marcy’s testimony discussing Ann included in the majority opinion, Dr. Marcy stated, “I came to the next to highest level of suspicion of probable.” In other words, of the “four levels of suspicion of child abuse” — “unlikely, possible, probable, and definite” — Dr. Marcy concluded that a suspicion-level classification of “probable” was most appropriate, given Ann’s injuries. Second, the majority’s conclusion that Dr. Marcy “couched his opinion [regarding Ann] in terms of suspicion of probability, which, standing alone, absent additional corroborating evidence, is insufficient in a criminal case” is unsound in that Dr. Marcy also couched his opinion regarding Jane in terms of “suspicion of probability.” As noted above, Dr. Marcy found that it was “probable” (not “definite”) that Jane had been sexually abused (yet the majority concludes that there was sufficiently weighty evidence to convict Williams for sexual battery of Jane).
*494 ¶ 52. In summary, the majority is misconstruing Dr. Marcy’s testimony and also placing more significance than is justified on Dr. Marcy’s stating that Jane’s injuries were consistent with sexual abuse “to a reasonable degree of medical certainty.” The majority itself notes that an expert need not use the phrase “to a reasonable degree of medical certainty” in describing his findings.
¶ 53. The majority states that “[t]he only evidence that Ann was sexually abused was Dr. Marcy’s testimony.” However, in addition to the medical evidence, there is the fact that, from Ann’s birth until she was placed in foster care at ten months of age, Ann was cared for almost exclusively by only three individuals: Williams, Kimberly Williams, and Kimberly’s grandmother, Iris Culver, all of whom testified at the trial and denied sexually abusing Ann. Both Kimberly and Kimberly’s grandmother testified that they had never inserted any object into Ann’s anus. Kimberly explained that, before Ann was placed in foster care, Williams was frequently left alone with Ann when Kimberly was working or out-of-town, which was often. The only explanation Williams offered regarding the condition of Ann’s anus was that Ann’s baby formula caused her to be constipated and then to have large, hard bowel movements. As mentioned, Dr. Marcy testified that the fissure on Ann’s anus was more consistent with something being pushed into the anus than with a bowel movement.
¶ 54. In addition, while certainly not determinative of whether Ann was sexually abused, Ms. Smith, Ann and Jane’s therapeutic foster mother, testified that when Ann was first placed with her, Ann “had no emotion” but now “she’s wide open” and “has blossomed.”
¶ 55. The jury heard the medical evidence and the testimony of the three individuals who had cared for Ann before she was placed in foster care. Based on the testimony presented and their observations of the witnesses, the jurors came not to believe Williams’ denial of guilt nor his explanation for Ann’s anal injuries. As stated above, it is not for this Court to “pass upon the credibility of witnesses and, where the evidence justifies a verdict, it must be accepted as having been found worthy of belief.” Massey, 992 So.2d at 1163. Thus, based solely on evidence presented at trial that was specific to Ann, and viewing it in the light most favorable to the prosecution, a rational trier of fact could have found that the elements of sexual battery of Ann were established beyond a reasonable doubt.
¶ 56. Therefore, I concur regarding issues “two” through “seven,” but must dissent regarding issue “one” because I conclude that there was sufficient evidence to support the jury’s verdict that Williams had sexually battered Ann. Accordingly, I would affirm the judgment of the trial court, convicting Williams on both counts of sexual battery.
RANDOLPH, CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.