# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-02040-SCT

*DECARLOS ANTONIO MOORE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/19/2007 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. DANIEL HINCHCLIFF |
| | LESLIE S. LEE |
| | ROBERT CHARLES STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     DeCarlos Antonio Moore was indicted as a habitual offender for the kidnapping, aggravated assault, and sexual battery of nine-year-old J.P.  Following a jury trial in the Circuit Court of Harrison County, Mississippi, Second Judicial District, Moore was found guilty and sentenced to life without parole on each count, to run consecutively.  Following denial of his post-trial motions, Moore filed notice of appeal.

**FACTS**

¶2.　J.P. lived with her family at the Keesler Bay Villa apartments in Biloxi, Mississippi. On the afternoon of February 14, 2006, J.P. and two of her siblings went to the nearby playground within the apartment complex. While at the playground, J.P. testified that Moore offered her some chocolate. J.P. then followed Moore into the apartment where he lived.[1] Upon entering the apartment, J.P. testified that Moore closed and locked the front door, then led her into Diamond's room. From there, according to J.P., Moore pulled down her pants and panties, removed his pants, got on top of her, and began "going up and down." At one point, J.P. testified that she saw two boys outside and attempted to scream, but Moore "put his hand over my mouth." Thereafter, according to J.P., she attempted to leave and Moore "put his hand over my neck" and "choked me." J.P. testified that when she then fell to the ground, Moore "tried to turn my neck all around." According to J.P., she initially felt pain, "[a]nd then I fell asleep." J.P. testified that when she awoke, Moore "was pulling up my pants and then he dragged me out the slide door[,]" and into the nearby woods "behind the big log." J.P.'s friend testified that she saw Moore "pulling [J.P.] behind the building."

¶3.　According to J.P.'s father, at around 5:30 or 6:00 p.m., his other children arrived home without J.P. Soon thereafter, he discovered J.P. walking up the stairs, bruised and bleeding,[2]

---

[1]According to J.P.'s father, Moore lived with his cousin, his cousin's girlfriend, and her two children, one of whom was J.P.'s friend, Diamond, in the apartment "across the hall downstairs."

[2]Her father testified that J.P.'s eyes were red and her face was swollen. According to to J.P.'s friend, she "was bleeding and her eyes was puffed up." J.P. testified that her mouth and nose were bleeding, her eyes "were messed up[,]" it hurt her neck to turn her head, and "my front and back was hurting."

with her shirt ripped and her "[c]lothes half on." Her father's fiancé immediately contacted the Biloxi Police Department. Thereafter, Moore was arrested in his apartment.[3] Investigator Michael Reid subsequently found three of J.P.'s hair beads in Diamond's room.

¶4.     J.P. arrived at the emergency room of the Biloxi Regional Medical Center later that evening. Stacey Battaya, R.N., observed that J.P. had "petechiae and hemorrhaging to her eyes[,]" along with "blood on her nose and slightly in her mouth also." Battaya collected a rectal swab, vaginal swab, blood swab, and dried secretions swab from J.P., and then submitted the entire sexual assault kit to an officer from the Biloxi Police Department. J.P. remained at the hospital overnight.

---

[3]Regarding the arrest, Moore's brief provides that:

[p]olice [d]ispatcher, Teresa Goldworthy, authenticated 911 tapes which were played for the jury. In the tapes[,] Moore called 911. Moore told Goldworthy his cousin called him and told him the police were at his apartment, that his name was being "scandalized," and that someone said he had "messed" with someone. He claimed to be in Jackson County with his girlfriend. The police said they would come to talk to him. He said he was with his girlfriend and her mother and they would drive in to the police department. At the end of the tape, Moore's arrest was audible, where he was told to put his hands into clear view.

At the time of his arrest, Moore was alone in the apartment at Keesler Bay Villa. According to Officer Jesse Calvert of the Biloxi Police Department, he found Moore on the floor of the bathroom, "holding a cell phone, and . . . telling me that he . . . had the police dispatch on the phone."

¶5.    Moore subsequently was indicted as a habitual offender[4] on counts of kidnapping,

aggravated assault,[5] and sexual battery.  On September 18, 2007, the jury trial commenced.

At trial, Battaya described petechiae as "a serious condition which is a rupture of the small

blood vessels at the surface of the skin[,]" typically caused by "[i]ncreased pressure from

vomiting or strangulation."  Also testifying was Gina Pineda, the assistant lab director at

ReliaGene Technologies, a private DNA company based in New Orleans, Louisiana.  She

was tendered and accepted as an expert in forensic DNA analysis.  According to Pineda, "I

can say with a scientific certainty that [Moore] is the donor to the sperm fraction of the

[vaginal swab] sample[,]" based upon the fact that "the major donor profile of the sperm

---

[4]Mississippi Code Annotated Section 99-19-83 states, in part, that:

[e]very person convicted in this state of a felony who shall have been
convicted twice previously of any felony or federal crime upon charges
separately brought and arising out of separate incidents at different times and
who shall have been sentenced to and served separate terms of one (1) year or
more in any state and/or federal penal institution, . . . and where any one (1)
of such felonies shall have been a crime of violence shall be sentenced to life
imprisonment, and such sentence shall not be reduced or suspended nor shall
such person be eligible for parole or probation.

Miss. Code Ann. § 99-19-83 (Rev. 2007).  On November 18, 1997, Moore was convicted
of manslaughter in the Circuit Court of Harrison County, Second Judicial District, and was
sentenced to and served four years in the custody of the Mississippi Department of
Corrections ("MDOC").  That same day, Moore was also convicted of robbery, and was
sentenced to and served four years in the custody of the MDOC.  On January 21, 2004,
Moore was convicted of possession of a controlled substance in the Circuit Court of Harrison
County, Second Judicial District, and was sentenced to and served four years in the custody
of the MDOC.

[5]The aggravated-assault count, brought pursuant to Mississippi Code Annotated
Section 97-3-7(2)(a), stated, in pertinent part, that "on or about February 14, 2006, [Moore]
did unlawfully, feloniously, willfully and purposely, cause serious bodily injury to [J.P.], by
choking and punching the said [J.P.] . . . ."

4

fraction of the vaginal swab occurs with a frequency of approximately one in 444 quadrillion persons in the Caucasian population; one in 17.2 quadrillion persons of the African-American population; and one in 140 quadrillion persons of the Hispanic population."

¶6.     After the State rested, Moore moved for a directed verdict, which was denied by the circuit court. Moore then elected neither to testify nor offer any further witnesses, and the case was submitted to the jury. Thereafter, the jury found Moore guilty on all counts. Pursuant to Mississippi Code Annotated Section 99-19-83, the circuit court sentenced Moore to a term of life without parole on each count, "to run consecutively." On September 24, 2007, Moore filed a post-trial motion seeking "a new trial or, in the alternative, . . . a judgment notwithstanding the verdict[,]" which was denied by the circuit court. Moore then filed timely notice of appeal.

**ISSUES**

¶7.     This Court will consider:

(1) Whether the jury was properly instructed upon the elements of aggravated assault.
(2) Whether the evidence of aggravated assault was sufficient to sustain the verdict.[6]
(3) Whether the circuit court committed plain error in failing to administer the required oath to the jury.

---

[6]Moore does not challenge the sufficiency of the evidence with respect to his convictions for kidnapping and sexual battery.

5

**I.     Whether the jury was properly instructed upon the elements of aggravated assault.**

¶8.     "Because the [S]tate has to prove each element of the crime beyond a reasonable doubt, then the [S]tate also has to ensure that the jury is properly instructed with regard to the elements of the crime." *Goodin v. State*, 977 So. 2d 338, 341 (Miss. 2008) (quoting *Hunter v. State*, 684 So. 2d 625, 635 (Miss. 1996)). Accordingly, this Court has stated that "it is 'fundamental error' to fail to instruct the jury of the essential elements of a crime." *Reddix v. State*, 731 So. 2d 591, 592 (Miss. 1999) (quoting *Screws v. United States*, 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)). *See also Goodin*, 977 So. 2d at 342 ("[b]ecause the jury was not properly instructed regarding the elements of the crime . . . , Goodin's conviction . . . is reversed and we remand for new trial.").

¶9.     Mississippi Code Annotated Section 97-3-7(2)(a) provides that "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . ." Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2007).

¶10.     Moore's argument regarding the jury instruction is erroneously premised upon the applicability of Mississippi Code Annotated Section 97-3-7(2)(b). According to Moore, "the jury as a matter of law must find that punching or choking is a 'means likely to produce death or serious bodily injury.'" However, as the State notes, "[t]he case at bar involves subsection (2)(a), which, according to the text itself, clearly does not require an allegation of the use of a deadly weapon or means likely to cause death or serious bodily injury." Moore was

6

indicted under Mississippi Code Annotated Section 97-3-7(2)(a). Therefore, Moore's argument is without merit.

## II. Whether the evidence of aggravated assault was sufficient to sustain the verdict.

¶11. Moore's argument on the insufficiency of the evidence is deeply intertwined with his argument regarding Jury Instruction S-2A. *See* Issue I. *supra*. According to Moore, "the jury verdict cannot as a matter of law be sufficient to all the elements where the jury was not properly instructed as to all the elements." Beyond that contention, Moore offers no argument on the insufficiency of the evidence. "This Court has traditionally held that where an assignment of error is not discussed in the briefs it is considered abandoned or waived." *Magee v. State*, 542 So. 2d 228, 234 (Miss. 1989). As such, this Court finds that Moore waived this issue.

¶12. Notwithstanding Moore's waiver, this Court finds that a substantive analysis of the evidence would likewise sustain the verdict. In analyzing the sufficiency of the evidence, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jones v. State*, 904 So. 2d 149, 153-54 (Miss. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). This Court "accept[s] as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and . . . disregard[s] evidence favorable to" Moore. *Anderson v. State*, 904 So. 2d 973, 977 (Miss. 2004).

7

¶13.    According to J.P., Moore "put his hand over my neck[,]" began choking her, and "tried to turn my neck all around." As a result, J.P. "fell asleep." A reasonable inference therefrom is that Moore applied such extreme pressure on the neck of nine-year-old J.P. that she was temporarily rendered unconscious. This evidence is supported by the testimony of Battaya that J.P. had "petechiae and hemorrhaging to her eyes[,]" a "serious condition" which can be caused by strangulation. Additionally, J.P. was bleeding from her nose and mouth and remained at the hospital overnight. All evidence, collectively viewed "in the light most favorable to the" State, was more than sufficient for a "rational trier of fact" to find the essential elements of aggravated assault under Mississippi Code Annotated Section 97-3-7(2)(a) "beyond a reasonable doubt." **Jones**, 904 So. 2d at 153-54. Therefore, this Court additionally finds this issue is without merit.

### III.    Whether the circuit court committed plain error in failing to administer the required oath to the jury.

¶14.    Regarding the jury oath,[7] Moore concedes that "[n]o objection was at raised at trial, and therefore this error must be presented under the doctrine of plain error." This Court has stated that:

---

[7]Mississippi Code Annotated Section 13-5-71 provides that:

[p]etit jurors shall be sworn in the following form:

"You, and each of you, do solemnly swear (or affirm) that you will well and truly try all issues and execute all writs of inquiry that may be submitted to you, or left to your discretion by the court, during the present term, and true verdicts give according to the evidence. So help you God."

Miss. Code Ann. § 13-5-71 (Rev. 2002).

8

[a]s a rule, [it] only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant. "It has been established that where fundamental rights are violated, procedural rules give way to prevent a miscarriage of justice." *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989).

*Sanders v. State*, 678 So. 2d 663, 670 (Miss. 1996). *See also Lawrence v. State*, 928 So. 2d 894, 897 (Miss. Ct. App. 2005) ("to prevail on appeal, this Court would have to find: (1) that there was error (in this case, that no oath was given); (2) that the error resulted in a manifest miscarriage of justice; and (3) that the error affected one of [the defendant's] substantive or fundamental rights.").

¶15.    There is a presumption "that the trial judge properly performed his duties . . . ." *Bell v. State*, 360 So. 2d 1206, 1215 (Miss. 1978). "Furthermore, in the absence of an affirmative showing to the contrary, it will be presumed on appeal that the jury in a criminal case was sworn." *McMillan v. State*, 191 Miss. 59, 61, 2 So. 2d 823, 824 (1941). Moore's argument is based upon the absence of the oath from the record and the orders of the circuit court which note only that the jury was "empaneled, chosen, and accepted . . . ." However, while the record does not explicitly reflect a reading of the oath, the record does include references to the oath. *See Carlisle v. State*, 936 So. 2d 415, 422 (Miss. Ct. App. 2006); *Acreman v. State*, 907 So. 2d 1005, 1008 (Miss. Ct. App. 2005). For instance, the circuit judge read Jury Instruction C-1 aloud, stating "[w]hen you took your places in the jury box, *you made an oath that you would follow and apply these rules of law to the evidence and in this way arrive at a verdict*. It is therefore your duty as jurors to follow the law which I shall state to you." (Emphasis added). Moreover, Jury Instruction D-4 provides that "if it should arise, the reasonable doubt justifies, *and under your oath*, the Court instructs that you must return a

9

verdict of not guilty in favor of the accused . . . ." (Emphasis added). Given the presumptions "that the trial judge properly performed his duties[,]" *Bell*, 360 So. 2d at 1215, and that the jury was sworn, *see McMillan*, 2 So. 2d at 824, this Court finds "the absence of an affirmative showing[,]" *id*., in the record that the oath was not administered to the jury. Even should the presumption be ignored, there has been no showing, or for that matter even argument, by Moore that "a miscarriage of justice[,]" occurred which affected a substantial or fundamental right. *Sanders*, 678 So. 2d at 670 (quoting *Gray*, 549 So. 2d at 1321). Accordingly, this Court finds that Moore failed to rebut the previously-noted presumptions and, therefore, failed even to establish an error to which the plain-error doctrine would apply. *See Sanders*, 678 So. 2d at 670. Thus, this Court finds this issue is without merit.

## CONCLUSION

¶16. Based upon the aforementioned analysis, this Court affirms the final judgment of the Circuit Court of Harrison County, Second Judicial District, convicting Moore of kidnapping, aggravated assault, and sexual battery, and sentencing him as a habitual offender to a separate term of life imprisonment without parole on each count, to be served consecutively.

¶17. **COUNT I: CONVICTION OF KIDNAPPING AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES IN COUNT I, COUNT II, AND COUNT III SHALL BE SERVED CONSECUTIVELY.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING.**