# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00312-COA

**BILLY CAROL ANDERSON A/K/A BILLY CAROL ANDERSON SR.**                APPELLANT

**v.**

**STATE OF MISSISSIPPI**                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/06/2015 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:  ERIN ELIZABETH BRIGGS |
| | GEORGE T. HOLMES |
| | BILLY CAROL ANDERSON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | ANGEL MYERS MCILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.

## CARLTON, P.J., FOR THE COURT:

¶1.     In June 2015 a George County jury found Billy Carol Anderson guilty of seven counts of touching-of-a-child-for-lustful-purposes under Mississippi Code Annotated section 97-5-23 (Rev. 2006).  The trial court sentenced Anderson to serve a term of fifteen years on each count, to be served consecutively in the custody of the Mississippi Department of Corrections (MDOC).  The trial court also fined Anderson $500 for each conviction.  Anderson appeals.

¶2. Anderson's counsel has filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005). His counsel represents that she diligently searched the record for any arguable issues that could be presented on appeal but found none. Anderson filed a pro se supplemental brief raising seven assignments of error on appeal. Based upon our thorough review of Anderson's supplemental pro se brief and the record, we find no arguable issues for appellate review. We therefore affirm Anderson's convictions and sentences without prejudice to his right to seek post-conviction relief.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. In August 2012, when she was fifteen years old, Susan[1] told her mother, Caroline, that her stepfather, Anderson, had been improperly touching her for the last several years.[2] Caroline did not initially contact the police. Caroline testified at trial, however, that after Anderson made inappropriate sexual references about Susan to her,[3] Caroline "put the puzzle pieces together" and contacted the police. At the George County Sheriff's Office Caroline spoke with Detective Jason Pharez. Detective Pharez started an investigation and arranged for Susan to be interviewed by a certified forensic interviewer. He listened in another room while the interview was being conducted. As a result of the interview, Detective Pharez also

---

[1] An alias is used due to the sensitive nature of this case.

[2] As background, the record reflects that Anderson was sixty-two years old at the time of his trial in June 2015. The record reflects that he has thirteen biological, adopted, or step children.

[3] Caroline testified that during a heated argument Anderson told her that "he just wanted to f— my daughter, [Susan]" and a few days later during another argument Anderson told Caroline, "I just want to lick [Susan's] tits."

2

spoke with several of Anderson's adopted or biological daughters, as well as Susan's mother, Caroline, and one of Anderson's former wives. Anderson was subsequently indicted in July 2013 on seven counts of touching-of-a-child-for-lustful-purposes under section 97-5-23. Collectively, the indictment alleged that between June 1, 2010 and July 31, 2012, Anderson lustfully touched Susan's vagina with his hand at a time when Susan was under the age of sixteen.

¶4. Before trial commenced, the State moved to allow testimony under Mississippi Rule of Evidence 404(b) from Ann, Anderson's adopted daughter, and Sally, one of Anderson's biological daughters,[4] to show Anderson's lustful, licentious intent and sexual motive (the *Derouen*[5] witnesses). The *Derouen* witnesses would testify that when they were around Susan's age Anderson improperly touched them under similar circumstances as those described by Susan. After hearing testimony of a number of witnesses and argument by counsel, the trial court determined that the testimony was admissible under Rule 404(b) to show licentious motive and intent and that the testimony's probative value outweighed any prejudicial effect under Rule 403. The trial court then held that with the proper limiting instructions, the witnesses would be allowed to testify at trial.

¶5. Anderson was tried in June 2015. The State's first witness was the victim, Susan.

---

[4] Due to the sensitive nature of their testimony, aliases are also used for these women.

[5] In *Derouen v. State*, 994 So. 2d 748 (Miss. 2008), the Mississippi Supreme Court held that, in sex-offense cases, admission of evidence of the defendant's sexual abuse of other minor victims, "if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury, should not be considered per se error." *Id.* at 756 (¶20).

Susan testified that she moved to George County at the end of May beginning of June in 2010, which was the summer before she started eighth grade. She testified that Anderson started inappropriately touching her before she moved to George County when she was twelve and it continued until she was fifteen or sixteen. Susan said that Anderson would "tickle" and "wrestle" with her and touch her vagina over her clothes. When she was asked to explain what she meant, Susan said that when Anderson was wrestling with her he would try to "touch her with his fingers every time" and that he would try to "shove them up there." Susan testified that this happened "all the time" and that it happened so many times that she could not remember all of them. Susan also testified that at the beginning, when she was twelve, she and Anderson would wrestle and she would start the wrestling. She said that "he started to touch me, and I didn't think anything of it because I was a young kid. I didn't expect to have a stepdad that would touch me." Susan then testified that after Anderson continued "messing with her," she would not start the wrestling anymore, and that Anderson would start it.

¶6.    Detective Jason Pharez was the State's next witness. He testified about his investigation of this case, as described above. Susan's mother Caroline testified after Detective Pharez and, as also described above, she testified about her role in reporting Susan's abuse allegations. The State's next witness was the forensic interviewer, Ashley Ahern. She testified that it is common for an abuse victim not to remember the exact number of times the victim has been abused, especially when it goes on for a long time. She also testified that the statements Susan made to her in the forensic interview were consistent with

a child that had been abused.

¶7.	Both *Derouen* witnesses, Sally and Ann, also testified at trial. Before they testified, the trial court read a limiting instruction to the jury with respect to their testimony.[6] Both Sally and Ann testified about incidents when Anderson inappropriately touched them beginning when they were about the same age as Susan. One of Anderson's assignments of error on appeal is the trial court's decision to allow Sally and Ann to testify. To avoid repetition, their testimony is detailed below in our discussion of this issue.

¶8.	After the State rested the defense moved for a directed verdict, which the trial court denied.

¶9.	The defense's first witness was Virginia, Anderson's oldest biological daughter. She testified that Susan was disrespectful to Anderson and that Susan would wear short shorts and a bikini top while riding horseback. Virginia also testified about Sally and Ann, the *Derouen* witnesses. To avoid repetition her testimony with respect to those witnesses will be addressed below. On cross-examination Virginia testified that she had not lived with Anderson and her stepmother since she was fourteen. She also admitted on cross-examination that before she moved out she and her younger sister Melissa told their

---

[6] The limiting instruction provided as follows:

The acts testified to by [Sally] and [Ann] are acts relating to charges for which Billy Carol Anderson Sr. is not present[ly] on trial, and are to be considered only for the limited purpose of showing proof of Billy Carol Anderson Sr.'s sexual motive and lustful intent. The Court instructs you that you cannot and must not simply infer that the defendant acted in conformity with his previous acts, and that he is therefore guilty of the charge for which he is presently on trial.

stepmother that Anderson sexually abused them. Virginia also testified that this was actually a lie. She testified that she and Melissa made up these accusations and told their stepmother so that she would get mad and leave. Virginia testified that her father, Anderson, never abused her.

¶10. Anderson testified on his own behalf. He said that Susan would come up behind him and begin wrestling with him all the time. He testified that he never physically hurt Susan and he denied ever inappropriately touching Susan. He also denied ever having any improper contact with any of his daughters.

¶11. The State called rebuttal witness, Janie Grice, another one of Anderson's daughters, who testified that four of her sisters, including Ann and Sally (the *Derouen* witnesses), all told her they had been abused by Anderson throughout the years.

¶12. The State rested, and the defense did not renew its motion for a directed verdict. The trial court instructed the jury, including repeating the limiting instruction the court had given with respect to the *Derouen* witnesses. The jury returned a verdict finding Anderson guilty on all seven counts of touching-of-a-child-for-lustful-purposes. After conducting a sentencing hearing, the trial court sentenced Anderson to consecutively serve a term of fifteen years on each count and fined Anderson $500.00 for each conviction. Anderson moved for a new trial, and the trial court denied Anderson's motion in October 2015. Anderson did not timely file a notice of appeal, but on February 26, 2018, Anderson was granted permission to serve an out-of-time appeal. Anderson's notice of appeal was filed two days later.

## STANDARD OF REVIEW

¶13.    In *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005), the Mississippi Supreme

Court established a procedure "to govern cases where appellate counsel represents an

indigent criminal defendant and does not believe his or her client's case presents any

arguable issues on appeal." *Thomas v. State*, 247 So. 3d 1252, 1256 (¶9) (Miss. 2018)

(internal quotation mark omitted).  In particular, *Lindsey* requires:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(1)-(5), (8);
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
>
> (3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
>
> (4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.
>
> (5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Thomas*, 246 So. 3d at 927 (¶12).  Upon review, we find that Anderson's appellate counsel

fully complied with *Lindsey*.

¶14.    Anderson has filed a pro se supplemental brief.  He claims:  (1) the trial court erred

7

by admitting prior-bad-acts evidence against him under Rule 404(b); (2) his indictment was defective because each count was identically worded and did not include specific dates of the offenses; (3) there was insufficient evidence to sustain the verdict against him; (4) the trial court erred by not allowing a jury instruction on simple assault; (5) the trial court erred because it did not swear in the jury; (6) the trial court abused its discretion when it did not sua sponte order a mistrial; (7) the trial court abused its discretion in sentencing him.  We address these assignments of error below.

## DISCUSSION

### I.      Admission of Prior-Bad-Acts Testimony

¶15.    Anderson asserts that the trial court erred when it admitted testimony from Ann and Sally about Anderson's prior bad acts.  Anderson argues that this testimony was unfairly prejudicial because the allegations were remote in time and because Ann lacked credibility. We disagree and reject this assignment of error.

¶16.    An abuse-of-discretion standard applies "when reviewing a trial court's ruling on the admissibility of evidence."  *Young v. State*, 106 So. 3d 775, 777 (¶9) (Miss. 2012).  Under Rule 404(b), prior bad acts "may . . . be admissible for . . . purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  M.R.E. 404(b).  With respect to sexual offenses, in *Derouen v. State* the supreme court held that "evidence of a sexual offense, other than the one charged, which involves a victim other than the victim of the charged offense for which the accused is on trial" may be

8

admitted if it satisfies Rule 404(b), is "filtered through Rule 403,[7] and [is] accompanied by an appropriately-drafted limiting or cautionary instruction to the jury." *Derouen*, 994 So. 2d at 756 (¶20). The record reflects that the trial court properly evaluated the prior-bad-acts evidence under Rule 404(b) and, after filtering it through Rule 403, admitted it for permissible, non-character purposes. *Id.* The record also reflects that the trial court gave an appropriately-drafted limiting instruction with respect to the testimony admitted. *Id.* As detailed below, we therefore see no error in the way in which the trial court handled the Rule 404(b) evidence in this case.

¶17. At the *Derouen* hearing, the trial court heard testimony from Detective Pharez, the investigating officer, as well as Ann, Anderson's adopted daughter, and Sally, one of Anderson's biological daughters. Ann testified that Anderson started acting inappropriately toward her when she was in third grade. He would ask her to touch herself, referring to "her parts" as "playing with the little man in the boat." As she got older, when she was about twelve, thirteen, or fourteen, he then started "smacking" her breasts and behind and always "played [it] off to be roughhousing or wrestling." Ann further testified that when she was fourteen, Anderson came up behind her and penetrated her vagina with his finger. She testified that he told her that boys were going to start showing an interest in her and that "he

---

[7] Rule 403 provides as follows:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

M.R.E. 403.

felt the need to show [her] what it feels like with and without a rubber." She testified that she told her friend what happened and she believed the authorities were called because that afternoon Anderson was arrested for molesting her. Ann testified that her mother took her to the jail to see Anderson after his arrest and that both her mother and Anderson pressured her to drop the charges against Anderson. Ann testified that she then recanted her allegations.

¶18. Sally testified that she is Anderson's biological daughter and lived with Anderson when she was fifteen. He started making inappropriate comments to her about being "horny" and he popped the thong of one of her friend's underwear when her friend bent down. Sally testified that one night she slept in Anderson's room because it was storming, and she woke up to him massaging her back and her behind under her clothes. She testified that she told him to stop, and then she walked out. Sally further testified that she felt like Anderson was going to do something inappropriate again, so she told her sister Tina what happened, and she did not go back to Anderson's house.

¶19. After hearing the argument of counsel, the trial court noted that the similarities between Susan's circumstances and those circumstances Ann and Sally described were "certainly stark." The trial court found that Sally and Ann's testimony about their sexual abuse by Anderson was admissible under *Derouen* for the purposes of "lustful intent, licentious motive and intent" and that the probative value of their testimony outweighed any prejudicial impact. The trial court held that their testimony would be allowed at trial accompanied by the appropriate limiting instruction.

¶20. We find no abuse of discretion in this determination. In *Green v. State*, 89 So. 3d 543 (Miss. 2012), the defendant was convicted on two counts of sexual battery and one count of touching-of-a-child-for-lustful-purposes, all of which arose out of his sexual abuse of his ten-year-old stepdaughter. *Id.* at 545-46 (¶¶1-2). The supreme court found that the trial court did not abuse its discretion under Rule 404(b) in allowing testimony about sexual offenses that the defendant had committed against four witnesses where their testimony demonstrated that the defendant "engaged in the sexual abuse of female family members in a similar manner (the same or similar acts, in the same or similar locations), when they were near the age of puberty." *Id.* at 549-51 (¶¶15-17).

¶21. Similarly, in *McGrath v. State*, 271 So. 3d 437 (Miss. 2019), the supreme court found that the trial court did not abuse its discretion in allowing the defendant's stepdaughter to testify about similar acts of sexual abuse as those he committed against the victim, another one of the defendant's stepdaughters. *Id.* at 441 (¶¶15-16). The supreme court observed that the perpetrator's position as a father to the girls "is particularly relevant . . . for Rule 404(b) purposes." *Id.* at 441 (¶16). As the court explained, "[s]exual acts which demonstrate a common plan, scheme, or system . . . utilized . . . repeatedly to perpetrate separate but very similar crimes, such that the defendant had a system that involved taking advantage of the parent-child relationship are admissible." *Id.* (internal quotation marks omitted).

¶22. Like the testimony from the witnesses in *Green* and *McGrath*, Ann's and Sally's testimony in this case showed that over the course of three decades Anderson, who was a father figure to all three girls, inappropriately touched female family members in a similar

11

way at a time when the girls were entering puberty. Ann's testimony also demonstrated that Anderson would use the same tactics, i.e., wrestling with the girls as the way in which he would inappropriately touch them, then "play[ing] it off" as if it were normal horseplay. Applying the same analysis as that used in *Green* and *McGrath*, we find that the trial court did not abuse its discretion in admitting the subject testimony under Rule 404(b). *McGrath*, 271 So. 3d at 441 (¶¶15-16); *Green*, 89 So. 3d at 549-51 (¶¶15-17).

¶23. Anderson asserts that Ann and Sally's testimony was more prejudicial than probative under Rule 403 because the circumstances described by Ann took place over thirty years ago and the circumstances described by Sally occurred approximately ten years ago. We find this argument without merit. Anderson relies upon *White v. State*, 228 So. 3d 893 (Miss. Ct. App. 2017) to support his argument. In *White v. State*, one of the charges against the thirty-three year old defendant was that he forcibly raped his eleven-year-old niece. *Id.* at 901 (¶¶18-19). The defendant argued that the trial court abused its discretion when it allowed evidence at trial under Rule 404(b) of an alleged consensual extramarital affair between the defendant and a teenage girl that occurred nine years earlier. *Id.* This Court agreed, finding that the two incidents at issue were "factually dissimilar" and the evidence was "minimally probative" and thus the requirements under *Derouen* were not met. *Id.* at 901-02 (¶¶19-20).

¶24. *White v. State* does not apply here. In contrast to the circumstances in *White*, there is a very strong similarity between the circumstances described by Ann and Sally and those described by Susan. Further, in *Gore v. State*, 37 So. 3d 1178 (Miss. 2010), the supreme court rejected the same "remote-in-time" argument Anderson makes here, citing numerous

12

cases in which the courts found no abuse of discretion in admitting testimony about abuse incidents occurring decades before the events in question. *Id.* at 1187 (¶20). As the supreme court recognized, "'even though the other crimes evidence may appear to be remote in time in some instances, the incidents are all within the same time period in terms of the victims' lives . . . .'" *Id.* at 1187 (¶19) (quoting *State v. Driggers*, 554 So. 2d 720, 727 (La. Ct. App. 1989)); *see Green*, 89 So. 3d at 547 (¶¶5-8) (finding no abuse of discretion in allowing testimony of other sexual offenses occurring five to nearly forty years before the offense at issue). The same analysis applies here. We find Anderson's "remote-in-time" argument without merit.

¶25. Anderson also argues that because Ann recanted her sexual abuse allegations against him her testimony lacked credibility and should not have been admitted at trial. Whether Ann's testimony was credible, however, goes to the weight—not the admissibility—of her testimony, and "the jury is the sole judge of the credibility of the witness." *Fontaine v. State*, 256 So. 3d 615, 626 (¶39) (Miss. Ct. App. 2018); *Bates v. State*, 172 So. 3d 805, 812 (¶26) (Miss. Ct. App. 2014). The jury in this case heard Ann's testimony, including her explanation about why she later recanted her sexual abuse allegations against Anderson, as well as Anderson's testimony that he never abused any of his daughters, and the testimony of one of Anderson's other daughters, Virginia, who testified that Ann told her that "she lied" about Anderson's sexual abuse. The jury also heard Virginia's testimony that Ann and Anderson later lived together and had a t-shirt business together, and that Ann testified against her mother to assist Anderson in getting custody of three of his other children. In

13

short, the jury heard all this testimony and determined Ann's credibility for themselves. We find no merit in Anderson's argument that Ann's testimony should have been excluded on credibility grounds.

## II. The Indictment

¶26.    Anderson was indicted on seven counts of touching-of-a-child-for-lustful-purposes under section 97-5-23. Section 97-5-23(1) provides that any person above the age of eighteen "who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch[,] or rub . . . any child under the age of sixteen …years … shall be guilty of a felony…." Count I of Anderson's indictment provides:

> [I]n George County, Mississippi, on or between *June 1, 2010 and July 31, 2010*, being at the time in question over the age of eighteen (18) years, for the purpose of gratifying his lust or indulging his depraved licentious sexual desires, did unlawfully, willfully and feloniously handle, touch or rub with his hand or any part of his body, or any member thereof the body of [Susan], a child who was at the time in question under the age of sixteen (16) years, to-wit: touching [Susan's] vagina with his hand, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

(Emphasis added). In each of the remaining six counts these allegations are repeated except that each Count encompasses a specific time period: Count I (on or between June 1, 2010 and July 31, 2010); Count II (on or between August 1, 2010 and December 31, 2010); Count III (on or between January 1, 2011 and May 31, 2011); Count IV (on or between June 1, 2011 and July 31, 2011); Count V (on or between August 1, 2011 and December 31, 2011); Count VI (on or between January 1, 2012 and May 31, 2012); Count VII (on or between June 1, 2012 and July 31, 2012).

14

¶27. Anderson asserts that the indictment was defective because the "identically-worded" counts did not contain specific dates, which hampered his ability to defend himself. At the time of Anderson's offenses and his trial the Uniform Rules of Circuit and County Court still applied to criminal proceedings.[8] Under Rule 7.06(5), "[a]n indictment shall . . . include . . . [t]he date, and, if applicable, the time at which the offense was alleged to have been committed." Relevant here, however, is that "a specific date in a child sexual abuse case is not required so long as the defendant is fully and fairly advised of the charge against him." *Jenkins v. State*, 131 So. 3d 544, 549 (¶14) (Miss. 2013) (internal quotation marks omitted). We find that the date ranges in Anderson's indictment were sufficient to apprise him of the charges against him and were narrow enough to provide notice to Anderson and allow him to defend himself against the charges.

¶28. Mississippi precedent supports our determination. In *Shoemaker v. State*, 256 So. 3d 604 (Miss. Ct. App. 2018), for example, this Court rejected the defendant's contention that an indictment containing a two-year date range for alleged sexual offenses against his step-granddaughter was defective because it hampered his ability to defend himself. *Id.* at 610 (¶21). The victim testified that the inappropriate contact occurred over a five-year to seven-year period, it "occurred so often [the victim] could not give specific dates and times," and the record reflected that the victim and the defendant had almost constant contact during the period at issue. *Id.* at 611-12 (¶¶25-29). We found that under these circumstances "the State could not narrow the date range provided in [the defendant's] indictment counts any more

---

[8] Anderson was tried in June 2015. The Mississippi Rules of Criminal Procedure became effective on July 1, 2017.

15

than it already did," and therefore we found that the defendant's assignment of error on this point was without merit. *Id.*

¶29. The same circumstances are present in this case. The counts in Anderson's indictment are not identical—they each contain specific time frames within which the alleged acts occurred. Further, the record reflects that the State could not narrow the date range any more than it did. Susan testified that Anderson started molesting her before she moved to George County when she was twelve and it continued until she was fifteen or sixteen, thus the molestation occurred over a four-year to five-year period. Susan also testified that Anderson touched her inappropriately "all the time," and that she could not remember how often because it "happened too many times." Under these circumstances, Anderson's assignment of error on issue is without merit. *Shoemaker*, 256 So. 3d at 611-12 (¶¶25-29); *Tapper v. State*, 47 So. 3d 95, 100-02 (¶¶18-25) (Miss. 2010) (rejecting defendant's contention that an indictment containing four identical sexual offense counts occurring during the same time period hampered his ability to assert any defense other than denial, finding that "it appear[ed] from the record and testimony, that the State could not narrow the time frame or provide more specific details than it did"); *Pustay v. State*, 221 So. 3d 320, 340-42 (¶¶48-56) (Miss. Ct. App. 2016) (rejecting defendant's assertion that the indictment, which contained multiple sexual abuse offenses and alleged nine-month time frames with respect to each offense, hampered defendant's ability to prepare a defense where the child victim testified that she could not remember dates well and the record reflected that the State had no other information to further narrow down the time period in each count).

16

¶30. Relying on *Goforth v. State*, 70 So. 3d 174 (Miss. 2011), Anderson also asserts that the lack of specific dates in the indictment prohibits him from claiming double jeopardy in a subsequent prosecution for the same offense. *Goforth*, however, is inapposite. In *Goforth* the indictment contained five *identically-worded* counts of sexual battery and the defendant was convicted of some of the identical counts, but acquitted of the others. *Id.* at 189-90 (¶69). Under these circumstances, the supreme court found that double jeopardy prohibited retrial on any of the counts, recognizing that if the defendant were retried, "neither she nor anyone else would be able to determine on which specific charges she previously was acquitted or convicted." *Id.* at 189-90 (¶69-70).

¶31. In Anderson's case, however, he was not acquitted on any of the counts against him, and, in any event, the counts were not identical. As we note above, each count was identified by separate time frames. As such, Anderson cannot be prosecuted again for the same offenses against Susan occurring in George County during the June 1, 2010 to July 31, 2012 dates described in his indictment. Anderson could claim double jeopardy should this occur. *See Bateman v. State*, 125 So. 3d 616, 627-28 (¶¶34-37) (Miss. 2013) (rejecting defendant's future double jeopardy claim where defendant was charged with five distinct counts, each "alleged to have occurred during a specific time frame," finding that it was "clear that [the defendant could not] be prosecuted subsequently for the same offenses against [the victims] during this time frame"); *see also Eakes v. State*, 665 So. 2d 852, 860 (Miss.1995) (rejecting defendant's double-jeopardy claim where the indictment alleged specific date ranges and defendant could claim double jeopardy if additional actions were brought charging him with

sexually abusing the same victim in the same county on or about the same dates in the indictment). Accordingly, we find that Anderson's "future double jeopardy" argument is without merit.

### III. The Sufficiency of the Evidence

¶32. As noted, Anderson was charged with seven counts of touching-of-a-child-for-lustful-purposes under section 97-5-23(1). The State was required to prove the following elements with respect to each of these counts:

> (1) that [Anderson] was above the age of eighteen when the act[s] occurred, (2) that he touched [Susan] for the purpose of gratifying his lust or depraved licentious sexual desire by either handling, touching, or rubbing [Susan] with his hands or any part of his body or member, and (3) that [Susan] was under the age of sixteen when the alleged incident[s] occurred.

*Smith v. State*, 867 So. 2d 276, 278 (¶13 (Miss. Ct. App. 2004). Anderson asserts that there was insufficient evidence to sustain the verdict against him because (1) the State did not prove the dates when the alleged incidents occurred; and (2) the State failed to prove lustful intent because the incidents Susan described at trial were "nothing more than horseplay."

¶33. As an initial matter, Anderson did not renew his motion for a directed verdict at the close of evidence, nor did he request a peremptory instruction or file a post-trial motion for a JNOV. Anderson, therefore, waived his sufficiency-of-the-evidence error on appeal. *Pace v. State*, 242 So. 3d 107, 117 (¶25) (Miss. 2018) ("In the absence of a renewal of the directed verdict, a request for a peremptory instruction, or a motion for a judgment notwithstanding the verdict, the defendant has waived the sufficiency error on appeal.").

¶34. Anderson, however, requests that this issue be reviewed for plain error. An appellate

court may exercise its discretion to review an issue for plain error "only where the error is clear or obvious and affects the party's substantial rights." *Faulkner v. State*, 109 So. 3d 142, 147 (¶15) (Miss. Ct. App. 2013). We assess the legal sufficiency of the evidence by determining "whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" *Id.* at 148 (¶26) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss.1968)). "In applying this standard, we consider all evidence in a light most favorable to the State." *Id.* Further, "the jury resolves matters of weight and credibility." *Id.*

### A. Dates of the Incidents

¶35. We find no merit in Anderson's assertion that there was insufficient evidence at trial as to the dates when the inappropriate touching incidents occurred. As the supreme court recognized in *McBride v. State*, 61 So. 3d 138 (Miss. 2011), "within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient." *Id.* at 150 (¶47) (internal quotation marks omitted). In this case Susan testified that she moved to George County at the end of May, beginning of June 2010. Susan was thirteen at that time. As noted above, Susan testified that Anderson molested her over a four-year to five-year period from the time she was twelve until she was fifteen or sixteen and that Susan testified that she could not remember how often this occurred because it "happened too many times." During Susan's redirect examination the State established that Anderson inappropriately touched Susan on a continual basis from the summer before Susan's eighth-grade year (May–June 2010) through the summer after Susan's ninth-grade year (through

19

July 31, 2012), which is the time period encompassed by the seven-count indictment.

¶36. These facts, taken in the light most favorable to the State, show that a rational juror could have found that Anderson committed the crime charged in the time periods set forth in each of the seven counts in the indictment. *McBride*, 61 So. 3d at 150 (¶¶47-51) (finding that the victim's testimony that the sexual abuse occurred within two months of the charged date was within reasonable limits of the charged time frame to support a sexual battery conviction); *Mosby v. State*, 134 So. 3d 850, 853-54 (¶¶9-11) (Miss. Ct. App. 2014) (finding that the victim's testimony that he was fondled "in the months prior to his moving to Oklahoma in January 2006" and evidence that the victim "was fondled the last time he stayed with [the defendant] in . . . late February or early March 2006" was sufficient to place defendant's conduct within the September 1, 2005 through March 2006 charged time frame in order to sustain defendant's convictions); *Faulkner*, 109 So. 3d at 148-49 (¶¶25-28) (finding that the victim's testimony "that the fondlings started 'within the first months' of his stay [in defendant's home], which began in August 2006," was sufficiently near the "during August 2006" charged time frame to sustain defendant's conviction).

#### B. Lustful Intent

¶37. Anderson also asserts that there was insufficient evidence that he acted with lustful intent. We also find no merit in this assertion. This Court's decision in *Smith*, supports our determination. Like Anderson, Smith asserted that the State did not present sufficient evidence to support the lustful intent element of the touching-of-a-child-for-lustful-purposes charge against him. *Smith*, 867 So. 2d at 278 (¶14). The victim in *Smith* "testified that [the

20

defendant] touched her breasts, asked her if it felt good, and told her not to tell anyone." *Id.* Smith, on the other hand, "acknowledged having touched [the victim] but denied any lustful intent." *Id.* The Court found that "[t]his presented a clear issue of disputed fact to be resolved by the jury." *Id.* Recognizing that it "must accept the evidence in the light most favorable to the verdict," *id.* at 278 (¶16), the Court held "that there was sufficient evidence presented through the testimony of the witnesses to support the State's case and allow the jury to decide if Smith was guilty of the touching of a child for lustful purposes." *Id.*

¶38. In this case, in addition to hearing Susan's testimony about Anderson's inappropriate touching as described above, the jury also heard the testimony of the *Derouen* witnesses regarding similar circumstances where Anderson touched them inappropriately and, in Ann's case, where the inappropriate touching also occurred during wrestling matches. We acknowledge that Anderson testified that this was all just "horseplay"; however, this presented an issue of disputed fact to be resolved by the jury. *Smith*, 867 So. 2d at 278 (¶14). The jury resolved this issue in favor of Susan. The lustful intent element was therefore established. *See id.* (citing *Evans v. State*, 159 Miss. 561, 132 So. 563, 564 (1931) ("Where the evidence was conflicting, the case was for the jury, whose verdict will not be disturbed on appeal.").

¶39. In sum, these facts, taken in the light most favorable to the State, show that a rational juror could have found that Anderson acted with lustful intent and committed the crime charged in the time periods set forth in each of the seven counts in the indictment. We find, therefore, that this assignment of error fails to rise to the level of plain error.

## IV. Jury Instruction on Simple Assault

¶40. Anderson asserts that he was entitled to a jury instruction on simple assault because simple assault is a lesser-included offense of fondling. There is no merit in this contention. In order for an offense to be a lesser-included offense, "it must be impossible to commit the greater offense without at the same time committing the lesser included offense." *Sheffield v. State*, 64 So. 3d 529, 532 (¶9) (Miss. Ct. App. 2011). The supreme court and this Court have found that "it is possible to commit fondling without committing an assault," *id.* at 532 (¶10), thus "simple assault is not a lesser-included offense of fondling." *Id.* at 532 (¶9) (citing *Ladnier v. State*, 878 So. 2d 926, 932 (¶¶21-25) (Miss. 2004); *Goodnite v. State*, 799 So. 2d 64, 68 (¶¶20-23) (Miss. 2001)). Anderson was not entitled to a simple assault jury instruction as a lesser-included offense.

¶41. Anderson also asserts that he was entitled to a jury instruction on simple assault as a lesser-*nonincluded* offense. Anderson did not raise this argument at trial, and it is therefore waived. *Triplett v. State*, 264 So. 3d 808, 810 (¶¶1-2) (Miss. Ct. App. 2018).

¶42. We also reject this assertion on the merits because a defendant is no longer entitled to lesser-nonincluded-offense instructions. In *Hye v. State*, 162 So. 3d 750 (Miss. 2015), the supreme court held "that a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Id.* at 751 (¶2). As addressed above, simple assault is not a lesser-included instruction for fondling. *Sheffield*, 64 So. 3d at 532 (¶9). Accordingly, under *Hye*, the trial

22

court did not err by refusing the jury instruction for simple assault. *Hye*, 162 So. 3d at 751 (¶2); *see Ford v. State*, 205 So. 3d 1172, 1180 (¶35) (Miss. Ct. App. 2016) (applying *Hye v. State* and finding no error in the trial court refusing a jury instruction for contributing to the delinquency of a minor as a lesser-nonincluded offense where that offense was not a lesser-included offense of gratification of lust). This assignment of error is without merit.

## V.     Administration of the Oath to the Jury

¶43.    Anderson asserts that his case should be reversed and rendered for a new trial because the oath was never administered to the jury, as evidenced by the absence of the oath in the trial transcript. Anderson never objected to a failure to administer the oath, thus we address this issue under the "plain error" standard. *See Moore v. State*, 996 So. 2d 756, 761 (¶14) (Miss. 2008). As such, for Anderson to prevail on appeal on this issue "this Court would have to find: (1) that there was error (in this case, that there was no oath given); (2) that the error resulted in a manifest miscarriage of justice; and (3) that the error affected one of [Anderson's] substantive or fundamental rights." *Lawrence v. State*, 928 So. 2d 894, 897 (¶10) (Miss. Ct. App. 2005). As detailed below, there is no basis for reversal in this case because Anderson has failed to provide sufficient evidence that the oath was not administered.

¶44.    In addressing this issue, we recognize that "[t]here is a presumption that the trial judge properly performed his duties," *Moore*, 996 So. 2d at 761 (¶15), and "in the absence of an affirmative showing to the contrary, it will be presumed on appeal that the jury in a criminal case was sworn." *Id.*; *see Holbrook v. State*, 4 So. 3d 382, 384 (¶5) (Miss. Ct. App. 2008).

In *Moore*, the defendant asserted that his convictions should be reversed because the trial judge did not administer the oath to the jury, supporting his assertion with the absence of the oath from the trial transcript and court orders that provided that the jury was "empaneled, chosen, and accepted," but did not provide that the jury was duly sworn. *Moore*, 996 So. 2d at 761 (¶15).

¶45.    On plain-error review, the supreme court rejected Moore's argument because the record reflected references to the oath in the instructions read to the jury. *Id.* Under these circumstances, the supreme court found that the defendant failed to rebut the presumptions that the trial judge performed his duties and that the jury was sworn. *Id.*; *see Holbrook*, 4 So. 3d at 383-85 (¶¶3-7) (absence of oath in trial transcript did not overcome presumption that jury was sworn where jury instructions contained language that the jurors "made an oath" and that "it would be a violation of [the jurors] sworn duty [to fail to apply the law as instructed]"); *Woulard v. State*, 832 So. 2d 561, 567 (¶¶24-25) (Miss. Ct. App. 2002) (language in the court's order that the jury was "duly sworn and empaneled" was sufficient to show jury was sworn, even where the record did not reflect that it was).[9]

¶46.    We reject Anderson's assignment of error on this point for the same reasons identified

---

[9] Anderson's reliance on *Gaskin v. State*, 873 So. 2d 965 (Miss. 2004), to support his argument is misplaced. In *Gaskin* the supreme court found that the jury had not been duly sworn in at the defendant's first trial, and therefore the court held that his double jeopardy rights had not attached. *Id.* at 968 (¶¶11-12). In that case, however, there was no reference at all in the record to an oath given to the jury. *Id.* Further, the supreme court requested the trial court to supplement the record with factual findings on this issue, and in those findings the trial court noted that the jury was dismissed for lunch before the oath was administered. *Id.* at 968 (¶12). That is not the case here where the trial court's sentencing order, as well as the unobjected-to jury instructions, referenced the oath given to the jury.

in the cases discussed above. Anderson bases his argument on the lack of the oath in the trial transcript and the fact that the trial transcript did reflect that each witness was duly sworn. The record, however, reflects that Anderson's sentencing order specifically provides that the jury was "duly sworn according to law." Further, the jury instructions provided that "[w]hen you took your places in the jury box, *you made an oath* to follow and apply the instructions of the Court regarding the law," and that "[r]egardless of any opinion you may have as to what the law ought to be, it would be a violation of *your sworn duty* to base a verdict upon any other view of the law than that given in these instructions by the Court." (Emphasis added). Based on Mississippi precedent, we find that Anderson has failed to rebut the presumption that the trial court administered the oath to the jury. *Moore*, 996 So. 2d at 761 (¶15); *Holbrook*, 4 So. 3d at 383-85 (¶¶3-7); *Woulard*, 832 So. 2d at 567 (¶¶24-25). Accordingly, this issue is without merit.

### VI. Mistrial Due to Witnesses in Courtroom

¶47. Anderson asserts that the trial court erred when it did not, sua sponte, declare a mistrial when it learned of two incidents where witnesses had apparently violated the witness sequestration rule, Rule 615 of the Mississippi Rules of Evidence,[10] during trial. We disagree.

¶48. The first incident Anderson describes in his brief is when the trial court learned of "witnesses going in and out of the courtroom" during trial. The trial court addressed this

---

[10] Rule 615 provides that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own." M.R.E. 615.

25

situation as follows:

> I understand there's some concern about witnesses going up and down out there and looking in the courtroom when witnesses are testifying. Make sure you tell your witnesses under oath and under the rule, that they're to stay where they're supposed to be, and they don't need to be walking up and down finding out who is testifying. I'm not going to have it. If they do it, one of the sanctions is they don't testify, so make sure you spread that word.

¶49. The second incident occurred a few minutes later when the prosecutor told the trial court that she had learned that Shay, a witness for the defense, had texted Ann "about the case, trying to tell her nothing has happened." The prosecutor asked for the court's assistance in "keep[ing] them away from us." The trial court addressed this situation as follows:

THE COURT: Wasn't that my first housekeeping thing . . . ?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: The rule being invoked, means it's invoked, and that means nobody better be talking to anybody. I'm going to start sanctioning people on both sides.

[COUNSEL FOR THE STATE]: Your Honor, can we give Mr. Beard the opportunity to let his witnesses know that they're not to contact—

THE COURT: I'll say it again. I want them told. And I'm not saying this is happening. . . . I'll let you [defense counsel] go talk to these people.

¶50. This Court "is limited to an abuse-of-discretion standard when reviewing an alleged sequestration violation." *White v. State*, 127 So. 3d 170, 174 (¶10) (Miss. 2013). In this regard, "[r]eversal is not justified unless there is a showing of prejudice sufficient to

constitute abuse of discretion on the part of the trial judge in not ordering a mistrial or not excluding testimony." *Id.* As the supreme court has explained, "[t]he purpose of witness sequestration is to (1) restrain witnesses from tailoring their testimony to that of earlier witnesses and (2) to aid in detecting testimony that is less than candid." *Id. See also* M.R.E. 615 advisory committee note ("The excluding or sequestering witnesses has long been recognized as a means of discouraging and exposing falsification, inaccuracy, and collusion.").

¶51. Anderson has made no showing that he was prejudiced by the witnesses walking in and out of the courtroom, or the witness Shay's contact with Ann—nor do we find any evidence in the record that these actions constituted attempts to tailor these witnesses' testimony or resulted in inaccurate or false testimony. In short, Anderson has demonstrated no prejudice to him resulting from these incidents that would warrant reversal. We find no abuse of discretion in the way the trial court handled the situation by firmly reminding counsel to re-explain to their witnesses their obligations under the sequestration rule and to warn counsel that further violations would result in sanctions. Anderson's assignment of error on this issue is without merit.[11]

## VII. Sentencing

---

[11] In his brief Anderson also asserts that there is a witness who signed an affidavit that he or she saw the State's rebuttal witness, Janie Grice, sitting in the courtroom for the entire trial. Anderson does not name the witness or provide any citation to the record where such an affidavit may be found. We do not find any such affidavit in the record, or any reference in the trial transcript about such an affidavit. Nor does the record or trial transcript contain any objection to Janie's testimony based upon a violation of the sequestration rule. We therefore have no basis to assess this point, nor will we do so. *See Ross v. State*, 954 So. 2d 968, 988 (¶33) (Miss. 2007) ("[W]e will not find prejudice absent a record.").

¶52.  Anderson asserts that his sentences should be reversed because the prior sexual abuse allegations made by Ann, a *Derouen* witness, were an improper factor in the court's sentencing decision.  "We review a trial court's imposition of a sentence under an abuse of discretion standard."  *Davis v. State*, 17 So. 3d 1149, 1152 (¶13) (Miss. Ct. App. 2009).

¶53.  In general, "'[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute.'"  *Davis*, 17 So. 3d at 1152 (¶13) (quoting *Nichols v. State*, 826 So. 2d 1288, 1290 (¶10) (Miss. 2002)).[12]  The penalty under section 97-5-23(1) for touching-of-a-child-for-lustful-purposes is a fine not to exceed $5,000, "or be committed to the custody of the Mississippi Department of Corrections [no]. . . more than fifteen . . . years, or be punished by both such fine and imprisonment, at the discretion of the court."  Miss. Code Ann. § 97-5-23(1).  Anderson was sentenced to fifteen years on each of the seven counts of touching-of-a-child-for-lustful-purposes, to be served consecutively, and fined $500 on each count.  Anderson's sentences were "within the limits prescribed by statute"—indeed, the fines imposed by the trial court were far lower than the maximum $5,000 fine per count that could have been imposed under section 97-5-23(1).  Anderson's sentence is therefore not subject to appellate review.  *Id.*

¶54.  Anderson asserts, however, that his due process rights were violated because the trial court improperly considered Ann's prior abuse allegations in its sentencing decision, and this caused the court to impose the maximum prison term for each of the seven counts against

_____

[12] In *Nichols v. State*, 826 So. 2d at 1290 (¶12), the supreme court explained that a sentence will be reviewed under an Eighth Amendment proportionality analysis under certain circumstances.  As addressed below, we find that no such analysis is required in this case.

him. We find this contention without merit. "[I]n sentencing, the trial court has broad discretion in the things it is able to consider and may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information it may consider, or the source from which it may come." *Davis*, 17 So. 3d at 1153 (¶16) (internal quotation marks omitted). Further, the trial judge specifically recognized at the sentencing hearing that Anderson "has not ever been convicted of a crime." We find nothing in the record that suggests that the trial judge placed improper emphasis on Ann's testimony in imposing Anderson's sentences, which were in the statutory limits. As the supreme court has recognized, "[t]he fact that [a defendant] may be convicted of a felony for the first time in his life, does not preclude a sentence for the maximum statutory limit." *Nichols*, 826 So. 2d at 1292 (¶16). We find no abuse of discretion in the sentences imposed in this case.

¶55. Lastly, to the extent Anderson is attempting to contend that his sentences were constitutionally disproportional, we recognize that the Mississippi appellate courts will review a sentence on this basis "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality." *Nichols*, 826 So. 2d at 1290 (¶12) (discussing *Harmelin v. Michigan*, 501 U.S. 957, 965-66 (1991)). The supreme court in *Nichols* recognized, however, that "where a sentence does not exceed statutory limits, it does not constitute cruel and inhuman treatment." *Id.* at 1292 (¶17). Because Anderson's sentences were within the statutory limits there is no inference of "gross disproportionality" and thus we are not bound to undertake a proportionality analysis in this case. *Id.* at 1292 (¶¶17-18); *see Davis*, 17 So. 3d at 1154 (¶22).

**CONCLUSION**

¶56.    "As part of the *Lindsey* procedure, this Court must determine, based on a review of the record and any pro se brief filed, whether any arguable issue exists." *Thomas*, 247 So. 3d at 1258 (¶16).  After a thorough review of Anderson's supplemental pro se brief and the record, including the indictment, all pretrial and post-trial motions and orders, the jury instructions, the trial transcript, and the trial exhibits, we find that no arguable issues exist warranting appellate review.  We therefore affirm Anderson's convictions and sentences. *Thomas*, 247 So. 3d at 1258 (¶¶16-17).

¶57.    **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.  LAWRENCE, J., NOT PARTICIPATING.**